Revised August 21, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-50439

_____


ROBERTO MARTINEZ TAPIA, individually and as a shareholder of
Tellas Limited; ROBERTO J. MARTINEZ ROCHA, individually and as a
shareholder of Tellas Limited; ROSA DE LOURDES R. DE MARTINEZ,
individually and as a shareholder of Tellas Limited; TELLAS
LIMITED

Plaintiffs-Appellants,

VERSUS


THE CHASE MANHATTAN BANK, N.A.; CHASE BANK & TRUST COMPANY (C.I.)
LIMITED; THE CHASE MANHATTAN PRIVATE BANK; THE CHASE MANHATTAN
TRUST CORPORATION LIMITED; THE CHASE MANHATTAN UNIT TRUST; THE
CHASE MANHATTAN REAL ESTATE FUND,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Western District of Texas
_____
August 19, 1998

Before POLITZ, Chief Judge, and DAVIS and DUHÉ, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiffs, Roberto Martinez Tapia *et al.*, appeal the district

court's grant of summary judgment to Defendants, The Chase

Manhattan Bank, N.A. *et al.*, dismissing Plaintiffs' suit arising

out of their investment losses in a real estate unit fund. We find

no error and affirm.

I.

Roberto Martinez Tapia is a successful Mexican businessman who lives in Durango, Mexico. From 1986 to 1992, Martinez Tapia served as the Secretary of Finance for the State of Durango, Mexico. Martinez Tapia's net worth was nearly $1 billion dollars. His assets included hotels located in both Mexico and the United States, hardware stores located in Mexico, various other real estate holdings, and stock in several companies.

In the early 1980s, Martinez Tapia began a financial relationship with Defendant Chase Manhattan Bank, N.A. ("Chase Bank"). Martinez Tapia initially sought advice from Antonio Moreno ("Moreno"), a Chase Bank Vice President in the Private Banking International Division. Over the next several years, Martinez Tapia invested conservatively in items such as certificates of deposit. Eventually, Moreno persuaded Martinez Tapia to diversify his investments to obtain higher returns. In order to facilitate these investments, Martinez Tapia agreed to obtain a private investment company. Moreno arranged for Martinez Tapia to take over a dormant Chase-owned private investment company, Tellas Limited ("Tellas"). Tellas had been organized under the laws of Jersey in the Channel Islands, and had previously been owned by Chase Bank & Trust Company (C.I.) Limited ("Chase Jersey"), a Chase Bank subsidiary.

In February of 1986, Martinez Tapia and his family executed a Company Management Services Agreement. Under the terms of this agreement, Chase Jersey provided nominal shareholders who held the Tellas stock in trust for Martinez Tapia, his wife, and his son.

Chase Jersey agreed to provide management and administrative services that Martinez Tapia might require, including maintenance of corporate and financial records. More importantly, Chase Jersey agreed to invest Tellas's funds as directed by Martinez Tapia. Martinez Tapia did not authorize Chase Jersey to invest Tellas funds without his authorization.

In April of 1987, Martinez Tapia told Moreno he was disappointed in the return his investments had earned. Moreno and Martinez Tapia agreed to meet in El Paso, Texas on April 13, 1987 to discuss other investment opportunities. Manuel Martinez ("Martinez"), another Chase Bank employee, accompanied Moreno to the El Paso meeting. At this meeting, Moreno and Martinez told Martinez Tapia that he could obtain a better return by diversifying into more aggressive investments such as the Chase Manhattan Unit Trust ("Unit Trust"), and, more specifically, the Chase Manhattan Real Estate Fund ("Real Estate Fund" or "Fund").

During these discussions, Moreno and Martinez gave Martinez Tapia general information about the Real Estate Fund. Moreno and Martinez told Martinez Tapia that investment in the Fund was subject to a three-year minimum holding period and required Martinez Tapia to give one year's advance notice to redeem the investment. Moreno and Martinez provided Martinez Tapia with a sales brochure for the Real Estate Fund. This sales brochure provided that "[t]he offering is made only by the Offering Circular, which can be obtained only from Chase offices . . . ." Both parties concede that Martinez Tapia neither requested nor read

3

either the Offering Circular or the Subscription Agreement. However, language in both documents is important to this appeal because the district court concluded that knowledge of this language should be imputed to Martinez Tapia.

The Offering Circular limited each fundholder's right to redeem the units that the fundholder had purchased as follows:

> Units may not be redeemed at the option of the Unitholders for a period of three years from their date of issuance. Thereafter, Units may be redeemed without charge upon twelve months' notice at the net asset value on the scheduled redemption date, which date shall be the first redemption date following the expiration of such notice period, unless postponed. . . . In order to safeguard the remaining Unitholders against the adverse effects of a hasty disposition of Fund assets, the Fund may postpone the scheduled redemption date for up to twelve months after the scheduled redemption date to complete the redemption of Units. . . . Management may suspend redemptions during any period when in its judgment conditions unduly interfere with the business or properties of the Fund or the equitable determination of net asset value. There will be no redemption fee or charge.

Thus, the Offering Circular expressly granted the manager of the Fund, Chase Manhattan Trust Corporation, Ltd. ("Chase Trust"), the authority to suspend redemptions indefinitely. The Offering Circular also discussed the restrictions on Unit redemption in a section entitled "Risk Factors."

After several hours of discussion with Moreno and Martinez, Martinez Tapia agreed to purchase $1.6 million dollars of Units in the Real Estate Fund. Martinez prepared a letter signed by Martinez Tapia confirming his purchase of the Real Estate Fund Units. The letter directed that all correspondence relating to the investment be sent to Moreno and Martinez in New York.

4

After returning to New York, Moreno arranged the purchase of the Units. Following the instructions in Martinez Tapia's letter, Chase Jersey executed a subscription agreement for $1.6 million dollars in Fund Units. The officers of Chase Jersey who executed the transaction read the Offering Circular and were aware of the rights vested in the manager to suspend or postpone redemption rights. During the next several months, Moreno and Martinez advised Martinez Tapia that his investments were performing well. In the fall of 1987, Martinez Tapia agreed to purchase an additional $1 million dollars in Fund Units. This purchase was executed in the same manner as Martinez Tapia's initial purchase.

In January of 1988, Martinez left Chase Bank and went to work with American Express International Bank ("American Express") in Miami, Florida. Martinez Tapia moved his accounts to American Express to continue dealing with Martinez. In March of 1988, American Express, on behalf of Martinez Tapia, began writing letters to Chase Bank and Chase Jersey directing that Martinez Tapia's investments be liquidated. In June of 1988, Chase Jersey informed Martinez Tapia that all of Tellas's investments had been liquidated, except for his investment in the Real Estate Fund. In response to Chase Jersey's letter, Martinez Tapia requested that all correspondence relating to Tellas and the investment in the Real Estate Fund be directed to American Express in Miami.

In July of 1989, Martinez Tapia requested that Tellas's Board of Directors redeem the Units in the Real Estate Fund and that the Board consider this request the one year advance notice required by

5

the Offering Circular.  Racquel Brookins, Martinez's assistant at American Express, wrote to Chase Jersey seeking confirmation that Martinez Tapia's Units would be sold in 1990 and that the proceeds would be transferred to American Express.  Chase Jersey confirmed receipt of Martinez Tapia's instructions and advised American Express that the Tellas Units would be sold in October of 1990.

On July 5, 1990, Martinez sent a letter signed by Martinez Tapia to Chase Jersey inquiring about the status of the Real Estate Fund and the requested redemption.  One day earlier, Chase Jersey had written American Express a letter advising American Express that redemptions of Units in the Real Estate Fund had been suspended, and therefore, that it could not honor Martinez Tapia's request to redeem Tellas's Units in the Real Estate Fund.  Martinez Tapia concedes that some time in 1990, American Express advised him of Chase Jersey's letter and that redemptions in the Fund had been suspended.

On July 23, 1990, Chase Trust issued letters to all investors in the Real Estate Fund confirming that as of April 23, 1990, it had suspended all redemptions of Units in the Real Estate Fund. Chase Trust cited the declining American real estate market as the reason for the suspension.  Following the suspension of redemptions, Chase Trust formulated a proposal to reorganize the Real Estate Fund.  Chase Trust sent this proposal to each Unitholder along with proxy ballots.  Martinez Tapia voted against the plan.

In October of 1990, Chase Trust notified all Unitholders that

6

the plan of reorganization had been approved. The plan provided for no new subscriptions and a queue system to honor redemptions in the order that they had been requested. From December of 1990 to March of 1991, American Express continued to exchange communications with Chase Jersey concerning the Real Estate Fund. Chase Jersey informed Martinez Tapia that it was awaiting his "final decision" regarding his interests in the Real Estate Fund. Chase Jersey did not receive any further communications regarding Martinez Tapia's "final decision" from either Martinez Tapia or American Express.

In January of 1992, Chase Trust advised the Unitholders that the plan of reorganization was no longer feasible and that the Real Estate Fund had been terminated as of January 14, 1992 as part of a liquidation plan. Under the liquidation plan, each Unitholder would receive a distribution on a ratable basis, without regard to any priority established under the previous plan of reorganization. The Unitholders incurred significant losses.

In June of 1993, Martinez Tapia, along with his wife and son, filed suit in Texas state court against Chase Bank, Chase Jersey, Chase Trust, The Chase Manhattan Private Bank, the Unit Trust, and the Real Estate Fund. Plaintiffs sought recovery under theories of breach of contract, fraud and misrepresentation, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Defendants removed the action to federal court under 28 U.S.C. § 1441(b). Subsequently, the

7

district court dismissed the Unit Trust, the Real Estate Fund, and Chase Manhattan Private Bank. The remaining Defendants filed a motion for summary judgment, which the district court granted, finding that Plaintiffs' claims were barred by the two- and four-year statutes of limitations found in Tex. Civ. Prac. & Rem. Code §§ 16.003(a) and 16.004(a). The district court also concluded that none of the applicable limitations periods had been tolled by Plaintiffs' alleged fiduciary relationship with any of the Defendants. This appeal followed.

II.

A.

We review *de novo* the grant or denial of summary judgment. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct 2548, 2553 (1986). Summary judgment is proper if the evidence shows the existence of no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). While we consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, Coleman, 113 F.3d at 533, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

8

574, 587, 106 S. Ct. 1348, 1356 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Szabo v. Errisson, 68 F.3d 940, 942 (5th Cir. 1995).

## B.

Plaintiffs' arguments on appeal focus exclusively on the district court's conclusion that all of Plaintiffs' claims are time-barred. Plaintiffs contend that (1) their claims for breach of contract, fraud and misrepresentation, and RICO violations were timely filed within four years of the date they first had knowledge of any problems relating to the investment; (2) their claims for breach of fiduciary duty and breach of the duty of good faith and fair dealing were timely filed within two years of the time they learned that Chase Trust possessed the right to suspend redemptions; and (3) an alleged fiduciary and/or confidential relationship between Martinez Tapia and certain of the Defendants tolled the applicable statute of limitations. We consider below each of Plaintiffs' arguments.

## 1.

Plaintiffs argue first that the district court erred in concluding that the statute of limitations had run on the claims for breach of contract, fraud and misrepresentation, and RICO violations. Specifically, Martinez Tapia argues that the statute of limitations on these claims did not begin to run until 1990 at the earliest, when he was notified that redemptions in the Real Estate Fund had been suspended. The district court concluded that

Martinez Tapia should have known of Chase Trust's right to suspend redemptions when he purchased the Units in 1987, and, therefore, the statute of limitations began to run on that date. For reasons to follow, we agree with the district court.

Courts recognize that financial investment involves attendant risks. The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks.[1] As several courts have recognized, the party claiming fraud and/or misrepresentation must exercise due diligence to discover the alleged fraud and cannot close his eyes and simply wait for facts supporting such a claim to come to his attention. This principle applies in a variety of contexts, including the issue presented in this case: when the applicable statutes of limitations begin to run.

In McGill v. Goff, 17 F.3d 729 (5th Cir. 1994), a panel of this Court considered whether the plaintiffs' claims for fraud and breach of fiduciary duty were barred by the applicable statute of limitations. The plaintiffs invested in a real estate joint venture. The plaintiffs alleged, *inter alia*, that the defendant, a co-manager of the joint venture, fraudulently solicited their

---

[1] See, e.g., Carr v. Cigna Sec., Inc., 95 F.3d 544, 547 (7th Cir. 1996) ("This principle is necessary to provide sellers of goods and services, including investments, with a safe harbor against groundless, or at least indeterminate, claims of fraud by their customers. . . . Risky investments by definition often fizzle, and an investor who loses money is a prime candidate for a suit to recover it.")

participation in the joint venture by overstating the return they would realize and misrepresenting how long the venture would hold the property. The district court dismissed plaintiffs' suit as time-barred because it was filed more than six years after the initial investment. On appeal, this Court affirmed, concluding that the defendant's "summary judgment evidence indisputably establishe[d] that [the plaintiffs] were aware of the falsity of [the defendant's] alleged representations in the summer of 1985." Id. at 733. Central to the court's conclusion was the fact that the plaintiffs had received and signed a copy of the joint venture agreement, which contained terms "so contrary to [the plaintiffs'] alleged understanding of the deal that upon review of the document, [the plaintiffs] would have been put on notice of [the defendant's] alleged fraud." Id.

The Seventh Circuit addressed a similar issue in Wolin v. Smith Barney Inc., 83 F.3d 847 (7th Cir. 1996). There, the plaintiffs, trustees of a pension plan, brought suit against a broker and his employer for advising the plaintiffs to make risky, illiquid investments while assuring them that the investments were liquid and safe. The court of appeals found that the plaintiffs' claims were barred and affirmed the district court's dismissal of the suit. The court stated that

> the doctrine of equitable tolling requires that the
> plaintiff lack constructive as well as actual knowledge
> in order to be permitted to sue after the deadline in the
> statute of limitations has expired. The plaintiffs in
> this case, had they been diligent, would have discovered
> the fraud long before 1990--indeed, before the fraud was
> even committed. For if diligent they would have

11

> discovered it when they received, and before they signed, the subscription agreement for the shares in the two limited partnerships.  A written statement available to the victims of fraud that reveals that a fraud has been committed furnishes constructive or inquiry notice of the fraud, and constructive notice creates a duty of diligent inquiry.  Eckstein v. Balcor Film Investors, 58 F.3d 1162, 1168 (7th Cir. 1995).

Id. at 853.

In Dodds v. Cigna Sec. Inc., 12 F.3d 346 (2d Cir. 1993), the plaintiff, a forty-five year old widow with a tenth-grade education, brought a securities action in which she alleged that she was induced into investing in securities that were unsuitable. The plaintiff alleged that contrary to the promises made to her by the defendant and its agent, the securities were too risky and illiquid.  The plaintiff did not read the prospectus the defendants furnished her.  Plaintiff brought suit, alleging four violations of the Securities Act and pendent state law claims for fraud, breach of fiduciary duty, and negligent misrepresentation.  The district court dismissed the claims as time-barred.  On appeal, the Second Circuit Court of Appeals concluded that warnings contained in the prospectus "were sufficient to put a reasonable investor of ordinary intelligence on notice of . . . the risk, and the illiquidity of these investments."  Id. at 351.  Therefore, the plaintiff's claims were time-barred.

The Fourth Circuit considered an analogous case in Brumbaugh v. Princeton Partners, 985 F.2d 157 (4th Cir. 1993).  The defendant marketed units in a limited partnership that owned and operated commercial properties and also served as a tax shelter to offset

12

the income of limited partners.  The defendant advertised the sale of the units through a document entitled "Private Placement Memorandum."  The plaintiff purchased one unit in 1982.  Several years later, in 1988, the Internal Revenue Service disallowed the partnership's tax deductions.  The plaintiff filed suit, alleging common law fraud and violations of state and federal securities laws.  The district court dismissed the complaint on statute of limitations grounds.  The Fourth Circuit affirmed, noting that "[i]nquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam."  Id. at 162. The document by which the defendant marketed the investment "contained a host of prior warnings making it plain that [the plaintiff] was purchasing, to put it mildly, a highly speculative investment."  Id.  The court therefore concluded that the plaintiff should be charged with constructive knowledge of the contents of the Private Placement Memorandum, which clearly disclosed the risk that the Internal Revenue Service could disallow tax deductions. Id.

With this background, we now turn to the issues presented in Martinez Tapia's appeal.  As the district court stated, the statute of limitations on the claims of breach of contract, fraud and misrepresentation, and RICO violations is four years.  Tex. Civ. Prac. & Rem. Code § 16.004(a).  In concluding that the limitations period accrued when Martinez Tapia initially purchased the Units in April of 1987, the district court imputed knowledge of the Offering Circular to Martinez Tapia.  We agree with this conclusion and

13

reject Martinez Tapia's argument that this was error.

The evidence is undisputed that Martinez Tapia is a sophisticated and successful businessman who spent several years serving as Secretary of Finance in the State of Durango, Mexico. It is also undisputed that Martinez Tapia invested over two and one-half million dollars in the Real Estate Fund. We agree with the district court that it was incumbent upon Martinez Tapia to do more than simply rely on the bald assertions and promises of Moreno and Martinez. Before he invested over two and one-half million dollars, reasonable diligence required him to read the only documents that contained the details of the offer he accepted when he purchased the Fund Units. See, e.g., Carr v. Cigna Sec., Inc., 95 F.3d 544, 547-48 (7th Cir. 1996); Myers v. Finkle, 950 F.2d 165, 167 (4th Cir. 1991).

The summary judgment record makes it clear that the Defendants did not "hide the ball" from Martinez Tapia. Moreno and Martinez supplied Martinez Tapia with a sales brochure outlining the Real Estate Fund in general terms. The sales brochure acknowledged that there were certain risks inherent in the Real Estate Fund due to possible changes in the market. Additionally, under a heading entitled "What to Do Next," the sales brochure directed the reader to obtain a copy of the Offering Circular and Subscription Agreement from Chase Bank. Rather than following this directive and obtaining a copy of the Offering Circular, Tapia relied upon the general assertions of Moreno and Martinez. As the district court concluded, a reasonable investigation by Martinez Tapia prior

14

to the purchase, consisting of reading the Offering Circular and Subscription Agreement, would have alerted him to the right of the Fund manager to suspend redemption, the right upon which this suit is predicated. Martinez Tapia is therefore charged with the knowledge of the contents of these documents, including the Fund manager's right to suspend redemptions.

It is also clear to us that Martinez Tapia should have been aware of substantial risks associated with his investment in the Real Estate Fund. A sophisticated investor knows that the price of real estate can fluctuate and that the fund manager of a real estate fund would likely reserve the right to limit or suspend redemptions in the fund in a depressed market. Martinez Tapia should have known to look to the Offering Circular for the precise contours of this likely limitation on his right to redeem his Units.

For the reasons stated above, we therefore agree with the district court that the statute of limitations on the claims for breach of contract, fraud and misrepresentation, and RICO violations began to run in 1987 when Martinez Tapia first purchased Units in the Real Estate Fund. A simple reading of the Offering Circular and the Subscription Agreement at that time would have alerted Martinez Tapia that the written terms of his investment varied from the alleged assertions and promises of Moreno and Martinez. Therefore, the district court correctly concluded that these claims were barred by the four-year statute of limitations.

2.

Next, Martinez Tapia argues that the district court erred in concluding that his claims for breach of fiduciary duty and breach of the duty of good faith and fair dealing were time-barred. The district court concluded that at the latest, the period of limitations on these claims began to run when Chase Trust informed Martinez Tapia that redemptions in the Real Estate Fund were being suspended in July of 1990--three years before Martinez Tapia filed suit. Assuming, without deciding, that a fiduciary relationship existed among the parties, we agree with the district court.

The district court concluded that these claims were governed by a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a).[2] The summary judgment evidence is undisputed that Chase Jersey advised Martinez Tapia by letter dated July 4, 1990 that redemption of Units had been suspended. Chase Jersey followed Martinez Tapia's instructions and sent this letter to Martinez Tapia's representatives at American Express. Martinez Tapia argues that the period of limitations did not begin to run until March of 1993, when he actually read the Offering Circular and discovered that Chase Trust had the authority to suspend redemptions. We find this argument unpersuasive. As more fully discussed above, the Offering Circular disclosed in plain terms the right of Chase Trust to suspend redemptions. The district court correctly concluded

---

[2] Although there has been some debate over whether the two-year or four-year statute of limitations applies to claims of breach of fiduciary duty under Texas law, Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas, 20 F.3d 1362 (5th Cir. 1994), holds that the two-year statute of limitations is the correct limitations period for such claims. Id. at 1373-74.

that a reasonable investor, when informed that redemption of his investment had been suspended, would have immediately investigated the propriety of this action. If Martinez Tapia had undertaken such an investigation, he would have easily discovered Chase Trust's right to suspend redemptions, along with any breach of fiduciary duty or breach of good faith and fair dealing. Therefore, we agree with the district court that the claims of breach of fiduciary duty and breach of good faith and fair dealing are barred by the two-year statute of limitations.

3.

To avoid the Defendants' arguments that his claims are time-barred, Martinez Tapia argues throughout this appeal--as he did in the district court--that an alleged fiduciary and/or confidential relationship between himself, Chase Jersey, and Moreno and Martinez lessened the degree of care he was required to exercise and tolled the statute of limitations on his claims. The district court rejected the fiduciary relationship argument, noting that Martinez Tapia had the "final word" on all investment decisions and that none of the Defendants were to make investments without Martinez Tapia's authorization. The district court concluded that any fiduciary duty that any of the Defendants may have owed the Plaintiffs was limited to ensuring that all investments were duly authorized by Martinez Tapia, and that this limited duty did not toll the statute of limitations.

While the nature of the duty owed by a broker will vary depending on the relationship between the broker and the investor,

17

where the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's order. Romano v. Merrill Lynch, Pierce, Fenner & Smith, 834 F.2d 523, 530 (5th Cir. 1987); see also Hill v. Bache Halsey Stuart Shields Inc., 790 F.2d 817, 825 (10th Cir. 1986) ("fiduciary duty in the context of a brokerage relationship is only an added degree of responsibility to carry out pre-existing, agreed-upon tasks properly"); Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 732 F.2d 859, 862 (11th Cir. 1984) ("duty owed by the broker was simply to execute the order"). Our review of the summary judgment record reveals that none of the Defendants possessed the authority to act without Martinez Tapia's direction. The Management Agreement between Martinez Tapia and Chase Jersey provided that funds would only be invested on the advice of Martinez Tapia. Nothing in the summary judgment record suggests that Martinez Tapia gave Moreno or Martinez any discretionary investment authority. Martinez Tapia does not point to any summary judgment evidence, other than his own subjective trust in Moreno and Martinez, to create a genuine issue of material fact on this point. We therefore agree with the district court that any fiduciary relationship between Martinez Tapia and the Defendants was limited to making investments approved by Martinez Tapia.[3] See

---

[3] Martinez Tapia also argues that not only were Moreno and Martinez agents of Chase Bank, they were also agents of Chase Jersey and Martinez Tapia. He contends, therefore, that Moreno and Martinez were acting in dual capacities and should be subjected to

<u>Hand v. Dean Witter Reynolds Inc.</u>, 889 S.W.2d 483, 492 n.5 (Tex. App.--Houston [14th Dist.] 1994, writ denied). This relationship, therefore, did not serve to relieve Martinez Tapia from making a reasonably diligent effort to inform himself about his purchase, and did not toll the statute of limitations. See <u>Courseview, Inc. v. Phillips Petroleum Co.</u>, 158 Tex. 397, 407, 312 S.W.2d 197, 205 (Tex. 1957) ("[A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party.").

The district court also correctly rejected Martinez Tapia's argument that his confidential relationship with Moreno and Martinez relieved him of the duty to protect his own interests. As the district court reasoned, any confidential relationship Martinez Tapia may have had with Moreno and Martinez did not excuse Martinez Tapia from investigating more thoroughly the terms of such a substantial investment. As more fully discussed above, the summary judgment evidence establishes Martinez Tapia's lack of due diligence in protecting his investment. As the district court stated, Martinez Tapia "failed to take the most basic precautions to learn of the terms governing an asset he was purchasing." The summary judgment record is silent on any inquiry that Martinez

---

a heightened fiduciary standard. Under this standard, Martinez Tapia argues that as "agents," they had an obligation to inform Chase Jersey and himself of all material facts pertaining to the Real Estate Fund, and that failure to do so constituted a breach of fiduciary duties. Notwithstanding other potential obstacles to this argument, as indicated above, the scope of any fiduciary duties owed by Moreno and Martinez was limited to making investments authorized by Martinez Tapia.

Tapia directed to Moreno or Martinez regarding the possible risks of his investment. Relatedly, Martinez Tapia produced no summary judgment evidence that either Moreno or Martinez concealed information relating to the risks of the investment. We agree with the district court that the summary judgment evidence indicates that Martinez Tapia was "an investor who simply did not want to be troubled with the details," and that his focus was solely "goal-oriented." Martinez Tapia did not exercise reasonable diligence in light of his relationships with the Defendants. Thus, we agree with the district court that any fiduciary and/or confidential relationship between Martinez Tapia and the Defendants did not toll the statute of limitations

### III.

For the reasons stated above, we conclude that the district court correctly determined that no genuine issues of material fact existed with respect to when the statute of limitations began to run on Martinez Tapia's claims. The district court correctly concluded that the two- and four-year statutes of limitations barred all of Martinez Tapia's claims. We therefore AFFIRM the district court's judgment in all respects.

AFFIRMED.

20