# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10333

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2016

Lyle W. Cayce
Clerk

CHARLIE ROWTEN; ROBERT ROWTEN,

      Plaintiffs - Appellees

v.

WALL STREET BROKERAGE, L.L.C.; TONI ROBERTSON, Individually
doing business as Wall Street Brokerage, L.L.C.; LARRY GOLDSTON,
Individually doing business as Wall Street Brokerage, L.L.C.; CAPROCK
SECURITIES, INCORPORATED,

      Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No 5:13-CV-111

Before JONES, WIENER, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Defendant-Appellants Wall Street Brokerage, L.L.C., Toni Robertson, Larry Goldston, and Caprock Securities, Inc. (collectively "Defendants") appeal the district court's denial of their motions for judgment as a matter of law

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10333

("JMOL"). Concluding that the Rowtens' claims are time barred, we reverse and render judgment for the Defendants.

## I.

## FACTS AND PROCEEDINGS

In 2008, Charlie Rowten and her husband Robert Rowten (the "Rowtens" or just "Rowten" when referring to Charlie alone) met with stockbrokers Toni Robertson ("Roberston") and Larry Goldston ("Goldston"), of Wall Street Brokerage, L.L.C. ("Wall Street"), about investing in a Real Estate Investment Trust ("REIT"), the Behringer Harvard REIT I. Robertson and Goldston, as independent contractors of Caprock Securities, offered the REIT and advertised it in local publications for which Rowten works as an advertising account executive. Each of the advertisements contained a small-print footer stating: "Securities offered through Caprock Securities." The Rowtens allege that the advertisements, Robertson, and Goldston all represented the REIT as a "guaranteed" investment that would earn a minimum 7% annual return without loss of, or risk to, principal.

On September 17, 2008, Rowten invested her entire retirement savings ($192,235.36) in the REIT by signing a Subscription Agreement. Her husband Robert was present when she did so.[1] Rowten signed and initialed the Subscription Agreement "under penalty of perjury," stating that she had received the REIT's Prospectus at least five days before signing and that she agreed to be bound by its terms and conditions. Even though the Subscription Agreement referenced the REIT's Prospectus eleven times, Rowten denies having ever received a copy of the Prospectus before she signed the

---

[1] The district court indicated that Robert Rowten is joined as a plaintiff because community funds were used to invest in the REIT.

2

No. 15-10333

Subscription Agreement. She testified at trial that Robertson and Goldston told her that they had run out of copies of the Prospectus. It is undisputed that the Prospectus states that investing in the REIT "*involves a high degree of risk*" and that investors should purchase shares only if they "*can afford a complete loss.*" The Prospectus also contains 29 pages of risk factors that should be considered before investing. Rowten states that she would not have invested in the REIT if she had read the Prospectus.

The investment increased initially. In July 2010, however, Rowten received the June 2010 statement, which indicated that the investment had lost $115,000, more than half of the principal. Rowten conducted internet research and called a REIT representative. She learned that her investment was not "guaranteed."

The Rowtens brought suit against the Defendants on April 30, 2013—more than four years after Rowten signed the Subscription Agreement, but less than four years after they received the June 2010 statement. The Rowtens asserted 19 causes of action. The Defendants moved for and received summary judgment on all claims except those relevant in this appeal: (1) promissory estoppel, (2) breach of warranty, (3) common law fraud, (4) statutory fraud, (5) breach of fiduciary duty, and (6) breach of oral contract. Each of these claims carry a four-year statute of limitations under Texas law.[2]

The Defendants moved for summary judgment on these claims as well. One of their arguments in the district court, as here, was that the Subscription Agreement created constructive or inquiry notice of the Prospectus's contents which contradict the alleged representations that the REIT was a guaranteed investment. The district court noted that there was a fact issue whether the

---

[2] TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051.

3

No. 15-10333

Rowtens received the Prospectus, but further noted that the fact was established that Rowten signed and initialed the statement in the Subscription Agreement that she had received the Prospectus and agreed to be bound by its terms. The district court nevertheless denied the Defendants' motion for summary judgment on these claims because the Rowtens had alleged reliance on fraudulent representations in deciding to invest, and "[t]he law does not allow a party making fraudulent representations to later rely upon the terms of the agreement as a defense."[3]

The case proceeded to trial, and the Defendants moved for JMOL, again raising the statute of limitations defense. They renewed this motion after resting their case and again after the jury's verdict. The district court denied their motions in each instance. Caprock Securities also unsuccessfully claimed in its motions that the evidence is insufficient to support liability against it.

The jury returned a verdict in favor of the Rowtens on all claims. It specifically found that the Rowtens could not have been aware of any of the Defendants' breaches before April 30, 2009, which is less than four years before the lawsuit was filed and approximately seven months after Rowten signed the Subscription Agreement.

The district court entered judgment on the jury's verdict in the amount of $195,390 in compensatory damages; $20,000 for Charlie's past mental anguish; $10,000 for Robert's past mental anguish; $25,000 in punitive damages against Robertson; $15,000 in punitive damages against Goldston;

---

[3] *Rowten v. Wall Street Brokerage, LLC*, No. 5:13-CV-111-C, slip op. at 7 (N.D. Tex. Dec. 18, 2014) (citing *LHC Nashua Partnership, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 460 (5th Cir. 2011); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011)).

No. 15-10333

$20,000 in punitive damages against Wall Street Brokerage; and $15,000 in punitive damages against Caprock Securities.

On appeal, the Defendants again raise the statute of limitations defense by challenging the district court's denial of their motion for JMOL. Caprock Securities also renews its contention that the evidence is insufficient to support the jury's verdict against it.

## II.

## STANDARD OF REVIEW

We review de novo the district court's denial of a motion for JMOL.[4] A motion for JMOL challenges the legal sufficiency of the evidence to support the jury's verdict.[5] JMOL should be granted only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[6]

## III.

## ANALYSIS

Recognizing the inherent risk in financial investments, courts require an investor seeking "to blame his investment loss on fraud or misrepresentation [to] . . . exercise due diligence to learn the nature of his investment and the associated risks."[7] This means that an investor "cannot close his eyes and simply wait for facts supporting [his] claim to come to his attention."[8] Anchoring this principle is the recognition that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of

---

[4] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013).

[5] *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000).

[6] FED. R. CIV. P. 50(a)(1).

[7] *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 409 (5th Cir. 1998).

[8] *Id.*

5

No. 15-10333

limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."[9]

This case is resolved by determining when the statute of limitations began to run on the Rowtens' claims, all of which are subject to a four-year statute of limitations.[10] "The controlling date for purposes of the running of the respective statutes of limitations is when a purchaser of securities knew—or in the exercise of reasonable diligence, should have known—of the alleged wrongdoing."[11] "If a reasonable person would inquire further, a plaintiff must proceed with a reasonable and diligent investigation of the facts the plaintiff has learned and is charged with the knowledge of all facts such an investigation would have disclosed."[12]

Rowten signed the Subscription Agreement on September 17, 2008. The Defendants contend that, through reasonable diligence, the Rowtens could have discovered their claims on that date. It is undisputed that, on that date, Rowten signed that she had received and agreed to be bound by the terms of the Prospectus, which clearly contradict any allegations that her investment was guaranteed. Although there is a fact issue whether Rowten actually received the Prospectus, the Defendants assert that her signing the Subscription Agreement that contained repeated references to the Prospectus and agreeing to be bound by its terms constitute "storm warnings" that would have caused a reasonably diligent investor to inquire further before

---

[9] *Maxwell v. Swain*, 833 F.2d 1177, 1178 (5th Cir. 1987).

[10] TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051.

[11] *Topalian v. Ehrman*, 954 F.2d 1125, 1133 (5th Cir. 1992); *see also Martinez Tapia*, 149 F.3d at 409–11 (applying same rule under Texas law).

[12] *Bodenhamer v. Shearson Lehman Hutton, Inc.*, No. 92-2392, 1993 WL 277033, at *2 (5th Cir. July 14, 1993) (unpublished).

investing.[13] They specifically contend that a reasonable investor would have obtained and read the Prospectus, and therefore would have learned of the Defendants' misrepresentations. We agree.

In *Martinez Tapia v. Chase Manhattan Bank, N.A.*, we addressed similar facts. The investor had invested in a real estate fund after the fund's representatives told him that the fund required a minimum three-year holding period and one-year's notice before any redemptions could be made.[14] The investor was provided with a sales brochure, which instructed the investor to obtain the Offering Circular and the Subscription Agreement.[15] The Offering Circular expanded on the fund representative's representations, giving the fund manager authority to suspend redemptions indefinitely.[16] After being unable to redeem his investment because the fund manager had suspended redemptions, the investor brought numerous state and federal claims, but did so more than four years after he made the investment.[17] On those facts, we held that the investor's claims were time barred, rejecting the investor's assertion that the limitations period did not begin to run until he learned that redemptions had been suspended.[18]

Reasonable diligence required the investor "to read the only documents that contained the details of the offer he accepted."[19] Because the sales brochure instructed the investor to obtain the Offering Circular and

---

[13] *See Jensen v. Snellings*, 841 F.2d 600, 606–10 (5th Cir. 1988); *cf. Sudo Props., Inc. v. Terrebonne Par. Consol. Gov't*, 503 F.3d 371, 376–78 (5th Cir. 2007) (distinguishing *Martinez Tapia and Jensen* where no such "storm warnings" were present).

[14] 149 F.3d at 406.

[15] *Id.* at 410–11.

[16] *Id.* at 406–07.

[17] *Id.* at 407–08.

[18] *Id.* at 409, 411.

[19] *Id.* at 410.

Subscription Agreement, we held that the investor could not simply rely "upon the general assertions" of the fund representatives in lieu of reading those documents.[20] We then held that the investor's claims were time barred because "[a] simple reading of the Offering Circular and the Subscription Agreement at that time would have alerted [the investor] that the written terms of his investment varied from the alleged assertions and promises of [the fund representatives]."[21]

We conclude, as a matter of law, that Rowten did not perform a reasonable investigation before investing in the REIT, and further conclude that had Rowten exercised reasonable diligence and read the Prospectus, she would have been aware—on the date she signed the Subscription Agreement— that her investment was not guaranteed. In signing the Subscription Agreement, Rowten warranted that she had received the Prospectus for the REIT no later than five business days before signing. She signed her initials next to the statement: "I have received the Prospectus for the Fund, and I accept and agree to be bound by the terms and conditions of the organizational documents of the Fund." She also separately warranted that she was not an unacceptable investor as defined by the Prospectus. The Subscription Agreement further directed Rowten to consult the Prospectus "for a discussion of risks related to an investment in Shares, by certain tax-exempt or tax-deferred plans," a category under which her investment fell. The Subscription Agreement referenced the Prospectus a total of eleven times.

In spite of this, Rowten testified that she never obtained or read the Prospectus before investing in the REIT. But, as in *Martinez Tapia*,

---

[20] *Id.* at 411.
[21] *Id.*

"reasonable diligence required [her] to read the only documents that contained the details of the offer [she] accepted" before investing.[22] Had she done so, she would have learned that, contrary to the Defendants' alleged misrepresentations, investing in the REIT "*involves a high degree of risk*" and that she should only purchase shares if she "*can afford a complete loss.*" At the very least, as the Defendants argue, a simple review of the Subscription Agreement would have made a reasonably diligent investor aware that something titled a "Prospectus" existed and that it included a discussion of "risks," "standards," "suitability requirements," "conditions," and "terms" of the REIT. In other words, Rowten would have discovered the Defendants' alleged misrepresentations at the time she invested in the REIT if only she had exercised reasonable diligence.

Rowten nevertheless contends that she should not be charged with notice of the Prospectus because the Defendants concealed the Prospectus from her. We observe initially that in *Jensen v. Snellings* we declined a similar invitation: "[A]n act of concealment should not relieve the plaintiff of his duty to exercise reasonable diligence to discover the fraud."[23] We noted instead that concealment "is only a factor to be considered in determining when the plaintiff should have discovered the fraud."[24] Even though the Rowtens testified that they did not receive a Prospectus before investing in the REIT, there are no allegations and no evidence that the Defendants concealed the existence of the Prospectus from them. Indeed, Rowten testified at trial that Goldston and Robertson told the Rowtens that a Prospectus existed, but that they had run

---

[22] *Id.* at 410.

[23] *Jensen*, 841 F.2d at 607; *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) ("Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence.").

[24] *Jensen*, 841 F.2d at 607.

out of copies. Further, the Subscription Agreement's repeated references to the Prospectus advised Rowten of its existence and of its critical importance to understanding her investment.

The Rowtens also attempt to distinguish *Martinez Tapia* because there, the plaintiff was a sophisticated investor, whereas here they contend that they are unsophisticated, inexperienced investors. This reasoning ignores that we apply an objective standard to determine what an investor would have known through the exercise of reasonable diligence.[25]

On these facts, we conclude that a reasonable investigation required Rowten to read the Prospectus. Had she done so, she would have learned immediately that her investment in the REIT was not guaranteed, contrary to the alleged representations from which this lawsuit arises. As in *Martinez Tapia*, a "simple reading" of the Prospectus before or at the time she made her investment "would have alerted [her] that the written terms of [her] investment varied from the alleged assertions and promises of" the Defendants.[26] As a matter of law, Rowten was on inquiry notice of her claims when she signed the Subscription Agreement. Accordingly, no legally sufficient basis justified the jury's finding to the contrary. Because the Rowtens waited more than four years from that date to file the instant suit, their claims are time barred.[27]

---

[25] *Id.* at 608.

[26] 149 F.3d at 411; *see also Bodenhamer*, 1993 WL 277033, at *3 (holding that an investor is on inquiry notice that a broker misrepresented the nature of an investment when there are "glaring inconsistencies" between those representations and the prospectus).

[27] Because the Rowtens' claims are barred by the statute of limitations, we need not resolve Caprock Securities' challenge to the sufficiency of the evidence.

No. 15-10333

## IV.

## CONCLUSION

We reverse the district court's denial of the Defendants' motions for JMOL as to their limitations defense, vacate the court's award of damages to the Rowtens, and render judgment for the Defendants.

REVERSED and RENDERED.