United States Court of Appeals
Fifth Circuit

**F I L E D**

June 29, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-60155

BAYLESS ("BO") ODELL WHEELER
and DANIEL L. MOORE,

Plaintiffs-Appellants,

VERSUS

BL DEVELOPMENT CORPORATION, D/B/A GRAND CASINO, TUNICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Mississippi

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellants Bayless "Bo" Wheeler and Daniel L. Moore
(collectively, "Appellants") filed suit against BL Development
Corporation, d/b/a Grand Casino Tunica ("Grand Casino"), asserting
that they were wrongfully terminated from their employment for
having reported potentially illegal activity on the part of Grand
Casino or, alternatively, on account of their race in contravention
of 42 U.S.C. § 1981. Grand Casino moved for summary judgment,
which was granted by the district court. Appellants timely filed

the instant appeal.

## BACKGROUND AND PROCEDURAL HISTORY

Moore first began his employment with Grand Casino in June 2000, when he was hired as Director of Transportation. Wheeler was hired soon thereafter as a transportation manager in August 2000. In late September 2001, Jimmy Buckhalter of Grand Casino's regulatory affairs department received information from an employee in the transportation department that a "tire changing" machine, i.e., a machine used to replace tires on metal wheel rims, had been "loaned" to Country Ford, a Ford dealership in Southaven, Mississippi, located approximately 20 miles northwest of Grand Casino. Buckhalter thereafter notified Karen Sock, Grand Casino's General Manager, of the information and requested that he be permitted to conduct an investigation into the matter. Buckhalter received authorization to proceed and his investigation began shortly thereafter in October 2001.

Buckhalter soon learned that Moore's son, Terry Moore, worked at Country Ford as a warranty agent and second in charge of the auto shop. Buckhalter inquired of Wheeler, as a transportation manager, how the tire changing machine made its way into the hands of Country Ford. Wheeler allegedly provided differing accounts of how the equipment was loaned to Country Ford.[1] Buckhalter

---

[1] Wheeler first admitted loaning the tire changing machine to Country Ford without authorization and without filling out any paperwork memorializing the loan. He subsequently stated that the equipment was broken and that he had reached an arrangement with

subsequently obtained the assistance of Daniel Moore, the Director of Transportation, to reconcile Wheeler's varying accounts and to contact his son Terry at Country Ford to uncover whether Terry had any additional information regarding the unauthorized loan. After several meetings between Buckhalter's investigative team and Appellants, it was determined that both Moore and Wheeler were to be suspended. Seven days later, Sock decided to terminate each of Moore's and Wheeler's employment with Grand Casino for "violation of company policy."

Meanwhile, at about the same time in October 2001, Grand Casino announced a new Executive Dry Cleaning Plan (the "Plan"), which offered Grand Casino executives up to $120 per month of free dry cleaning services.[2] Believing the arrangement between the dry cleaner and Grand Casino to be an illegal kickback, Appellants allegedly reported the Plan to Buckhalter prior to his investigation into the loaning of the tire changing machine. Appellants readily admit that after initially being suspended by Grand Casino, but before they were terminated, they also sent a

---

Country Ford whereby Wheeler would loan the machine to Country Ford if they could, in return, fix it. It was discovered, however, that Wheeler could not identify what part of the machine was broken nor did the Country Ford representative with whom Wheeler allegedly made the arrangement have any knowledge of needing to repair the machine. In fact, the Country Ford representative revealed that the dealership did not have the capability to fix a tire changing machine.

[2] The arrangement between the dry cleaner and Grand Casino was subsequently amended to offer executives 50% off all dry cleaning instead of the $120 in free monthly services.

memo to the Mississippi Gaming Commission detailing how they perceived the Plan to constitute illegal activity. The Gaming Commission conducted an investigation and ultimately concluded that the Plan was not criminally illegal.

Upon being terminated, Appellants filed suit against Grand Casino, alleging that their termination was the result of their reporting to Buckhalter their belief that the Plan was illegal, and therefore was in violation of a public policy-based exception to Mississippi's employment at will doctrine. Alternatively, Appellants maintained that their termination by black casino executives occurred because Appellants are white, in violation of 42 U.S.C. § 1981. Grand Casino moved for summary judgment, arguing that there existed no genuine issue of fact under which Appellants could recover for either claim.

The district court granted Grand Casino's motion, concluding that the relevant exception to the employment at will doctrine provides Appellants protection from subsequent termination only if the activity reported was "criminal," not merely illegal. Having found that the reported activity was neither criminal nor illegal, the district court concluded that Appellants were precluded from recovering under that claim. In addition, the district court found that Appellants had not come forward with evidence establishing a prima facie case of racial discrimination, most notably proof that Grand Casino replaced Appellants with employees outside Appellants' protected class. Appellants timely filed the instant appeal.

4

## STANDARD OF REVIEW

This Court reviews grants of summary judgment de novo, applying the same standard as the district court. Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir. 2003). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322.

## DISCUSSION

On appeal, Appellants maintain the district court erred on two grounds when it granted summary judgment in favor of Grand Casino. First, Appellants argue the district court misapplied Mississippi law in denying them relief for reporting what they believed to be illegal activity. Second, Appellants contend the district court

5

erroneously concluded that they did not provide sufficient evidence establishing a prima facie case of racial discrimination.

In response, Grand Casino argues the district court correctly determined that the activity reported by Appellants did not actually constitute a crime and therefore summary judgment was appropriate under Mississippi law. Moreover, Grand Casino maintains the only competent evidence of racial discrimination offered by Appellants is irrelevant because the black employee allegedly subjected to disparate treatment was not a "similarly situated" employee under "nearly identical" circumstances.

**I.  Whether the exception to Mississippi's employment at will doctrine requires the conduct reported to actually be criminal in nature.**

Mississippi has adhered to the employment at will doctrine since 1858. <u>Perry v. Sears, Roebuck & Co.</u>, 508 So. 2d 1086, 1088 (Miss. 1987). Under this common law rule, the employment contract between employer and employee may be terminated by either party with or without justification. <u>HeartSouth, PLLC v. Boyd</u>, 865 So. 2d 1095, 1108 (Miss. 2003) (citation omitted). In <u>McArn v. Allied Bruce-Terminix Co., Inc.</u>, 626 So. 2d 603 (Miss. 1993), the Mississippi Supreme Court carved out a public policy exception to this general rule. In <u>McArn</u>, the employee worked for a pest control service company. <u>Id.</u> at 604. McArn was ultimately terminated and claimed that he was wrongfully discharged because he had reported to customers and a state agency that the work being

6

performed by his former employer was inadequate or, in some cases, non-existent.  Id. at 605-06.  In seeking to have the Mississippi Supreme Court create a narrow public policy exception to the common law rule, McArn asserted that he was simply reporting conduct that was criminal under Mississippi law.  Id. at 606 (citing MISS. CODE ANN. §§ 97-19-39 and 69-23-19 (1972) (denoting as a felony the receipt of money under false pretense and as a misdemeanor the violation of state pest control regulations)).  The Mississippi Supreme Court agreed with McArn, concluding that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." Id. at 607 (determining that the exception applies even where there is a "'privately made law' governing the employment relationship").

Appellants maintain that although the activity they reported involving the Plan was ultimately neither illegal nor criminal, McArn simply requires that they reasonably believed the activity to be criminally illegal.  Appellants rely on the Mississippi Supreme Court's decision in Willard v. Paracelsus Health Care Corp., 681 So. 2d 539 (Miss. 1996) ("Willard I"), in support of their position.  In Willard I, two hospital workers were terminated after reporting to their superiors that the hospital administrator was receiving checks personally made out to her in alleged violation of hospital policy.  Id. at 540.  After a jury trial, judgment was

7

entered upon jury verdicts in favor of the former hospital employees. Id. The employees appealed, however, arguing that they were entitled to a jury instruction on retaliatory discharge and, if found by the jury, consideration of an award for punitive damages. Id. at 540-41. The Mississippi Supreme Court ruled the trial court erred by not giving such an instruction and remanded the case to consider whether the hospital committed the independent tort of retaliatory discharge and, if so, to consider whether punitive damages were recoverable. Id. at 543.

Appellants specifically rely on the court's statement that "[d]ischarge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages." Id. (emphasis added). Appellants argue this statement can be interpreted as not requiring a plaintiff to prove that the alleged illegal act reported is actually illegal, only that he had a good faith belief of the same.

Appellants' argument is unpersuasive. As an initial matter, the issue in Willard I was not whether the reported activity was reasonably believed to be illegal. Rather, the activity at issue in Willard I involved a cut-and-dried case of forgery. The court did not engage in any discussion of whether the conduct reported was criminally illegal.[3] Therefore, Appellants' attempt to equate

---

[3] In fact, by its own terms, the only issue the Mississippi Supreme Court was addressing was whether an employee's reporting of illegal activity is an independent tort giving rise to punitive damages – a question expressly left unanswered in McArn. Willard

8

an employee's "good faith _effort_" in reporting illegal activity, which is protected under the common law exception, with a good faith _belief_ that illegal activity is taking place is misplaced.

Appellants further rely on a subsequent Mississippi Supreme Court ruling, <u>Paracelsus Health Care Corp. v. Willard</u>, 754 So. 2d 437 (Miss. 2000) ("<u>Willard II</u>"), in which the court again addressed the scope of its previous decision in <u>McArn</u>. Appellants specifically cite the court's statement that "neither <u>McArn</u> or <u>Willard I</u> . . . suggest that the plaintiff must first prove that a crime was committed" for the proposition that a plaintiff merely needs to have a good faith belief that the reported conduct is illegal to benefit from the public policy exception. <u>Id.</u> at 443.

Again, Appellants' argument is unpersuasive. In <u>Drake v. Advance Construction Service, Inc.</u>, 117 F.3d 203 (5th Cir. 1997), this Court explored the boundaries of <u>McArn</u>'s public policy exception. The employee in <u>Drake</u> was retained as a quality control manager of a construction site. <u>Id.</u> at 203. After reporting to his superiors certain deficiencies in the way the job was being completed, he was ordered not to include such deficiencies in his formal reports to the Army Corps of Engineers (the "Corps"). <u>Id.</u> at 204. The employee decided otherwise and included the observed deficiencies in the quality control reports he submitted to the Corps. <u>Id.</u> at 203-04. After being terminated shortly thereafter,

---

<u>I</u>, 681 So. 2d at 543; <u>see also</u> <u>McArn</u>, 626 So. 2d at 608.

the employee filed suit against his employer, alleging that he was wrongfully discharged under the McArn public policy exception for refusing to commit an illegal act. Id. at 204. The district court granted summary judgment in favor of the employer, finding that the "[d]eliberate failure to note a deficiency in the placement of [rock], while perhaps unprofessional or immoral, is not an illegal act." Id. On appeal, this Court discussed whether the submitting of those particular false reports was violative of 18 U.S.C. § 1001. Concluding that a genuine issue of material fact existed as to whether such reporting would have constituted an illegal activity, this Court reversed and remanded the case to the district court. Id. at 205-06.

Importantly, the Drake Court did not conclude that the employee was protected under McArn simply because he reasonably believed what he was asked to do by his superiors was criminal. Instead, remand was ordered to determine the legality of such action, lending credence to Grand Casino's position that the act itself must be criminal to implicate the exception and rendering the subjective intent or belief of the plaintiff irrelevant. Clearly, as the parties concede in the instant case, the Plan did not constitute any form of criminally illegal activity; therefore, McArn's "narrow public policy exception" is not applicable in this instance. To assist Appellants in broadening the scope of what the Mississippi Supreme Court and this Court have continually recognized as a "narrow public policy exception," see Drake, 117

10

F.3d at 204; <u>Boyd</u>, 865 So. 2d at 1108, would serve to envelope a much wider class of activities – a broadening that is at odds with the intent of the Mississippi Supreme Court when it first created the exception.[4]

In sum, the district court did not err when it determined that Appellants are precluded from recovering under the public policy exception because they have failed to come forth with evidence establishing that the Plan itself constituted criminal activity.

**II.  Whether there was sufficient evidence supporting Appellants'**

---

[4] This Court has also considered whether the violation of a federal regulation (OSHA) was tantamount to criminally illegal activity under the state criminal code, and thus subject to the <u>McArn</u> exception. <u>Howell v. Operations Mgmt. Int'l, Inc.</u>, No. 03-60238, 2003 WL 22303057 (5th Cir. Oct. 8, 2003) (unpublished opinion).  Specifically, the <u>Howell</u> court ruled:

> Although Mississippi law generally permits employers to terminate their at-will employees for any reason, the Mississippi Supreme Court created a "narrow public policy exception" to that rule in <u>McArn v. Allied Bruce-Terminix Co. Inc.</u>, 626 So. 2d 603, 607 (1993). The exception creates a tort action in favor of an at-will employee who is discharged for "refus[ing] to participate in an illegal act" or for "reporting **illegal acts** of his employer." <u>Id.</u>  <u>McArn</u> itself involved a **criminal act**, and the Mississippi Supreme Court's statement of the issue on appeal was phrased in terms of "participat[ion] in **criminal activity**." <u>Id.</u> at 604, 606. Howell did not assert before the district court that his OSHA complaints, had they found been found meritorious, would have amounted to reports of **criminal acts**. Howell has not shown us, and we have not found, any Mississippi cases indicating that the <u>McArn</u> exception applies to regulatory violations of the sort involved in Howell's OSHA complaints. Our own court's prior cases involving the <u>McArn</u> exception have involved **criminal illegality**.

<u>Id.</u> at *3 (emphases added and footnotes omitted).  Again, this Court focused on the criminal illegality of the act itself, without regard to what the plaintiff reasonably believed to be illegal.

11

**race discrimination claims.**

In its Memorandum Opinion, the district court found that Appellants' summary judgment evidence failed to establish a prima facie case of racial discrimination. On appeal, Appellants maintain they produced sufficient evidence of discrimination, including evidence that they were replaced by someone of a different race and that they were treated less favorably than a similarly situated person of a different race.

Under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff may establish a prima facie case of discrimination using circumstantial evidence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). To establish a prima facie case of discrimination under § 1981, Appellants must establish that they: (1) are members of a protected group; (2) were qualified for the position held; (3) were discharged from the position; and (4) were replaced by persons outside of the protected group. Singh v. Shoney's, Inc., 64 F.3d 217, 219 (5th Cir. 1995). The burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the termination. Laxton, 333 F.3d at 578. If the employer is successful in producing such a reason, the presumption of discrimination dissipates, leaving the plaintiff with the ultimate burden of establishing, by a preponderance of the evidence, that the employer discriminated against the employee because of the

12

employee's protected status. Id.

The district court concluded that summary judgment was proper as to Appellants' § 1981 claims because Appellants were unable to satisfy the fourth element of the four-prong test, i.e., that they were replaced by a person outside the protected group.[5] This Court has recognized that a plaintiff may make this showing by demonstrating either that he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Appellants maintain they established the fourth prong by presenting evidence that Richard Simms, a black male and the former Vice President of Resorts, assumed their duties. In addition, as evidence that they were treated differently than other similarly situated employees, Appellants argue Grand Casino did not take disciplinary action against Debra Byrd, a black female manager, who was found to have hidden Grand Casino property from auditors.

With regard to Appellants' first contention, the district court found that shortly after Appellants were terminated, Grand

---

[5] The district court also found that, even assuming Appellants did come forth with evidence establishing a prima facie case of discrimination, they nevertheless failed to rebut Grand Casino's legitimate and non-discriminatory reason for discharging them. Clearly, under McDonnell Douglas, we need not reach this second issue if we conclude Appellants did not first establish a prima facie case of discrimination. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000).

13

Casino engaged in a departmental restructuring. As a result of this restructuring, Simms assumed the position of Vice President of Security — a position neither Moore nor Wheeler previously held. Moreover, there is record evidence establishing that Appellants' previous positions were formally assumed by white males after the restructuring. Specifically, Moore's position as "Director of Transportation" was filled by Chris Tatum as the "Director of Resort Operations," and Leroy Harrison assumed the position of "Transportation Manager," the position formerly held by Wheeler. Both Tatum and Harrison are white. Based on these facts, the district court properly concluded that Appellants were not replaced with persons outside the protected class.

As for Appellants' second argument regarding dissimilar treatment for similarly situated employees, the district court determined that Byrd, a black Grand Casino manager, was ultimately not terminated because she was truthful in her statements during the course of the investigation into her actions. Conversely, the district court found it relevant that Wheeler was discharged for making repeated, untruthful statements during the company's investigation into his unauthorized loaning out of equipment.

To establish disparate treatment, a plaintiff must demonstrate that a "similarly situated" employee under "nearly identical" circumstances, was treated differently. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). Appellants argue that Wheeler, Moore, and Byrd all had the same supervisor; Moore

14

and Byrd were both directors; and all three were accused of removing company assets at relatively the same time. Appellants offer as further proof of their employment discrimination claim the fact that the decision makers responsible for terminating Appellants are all black (Karen Sock, Richard Simms, and Jimmy Buckhalter).

In response, Grand Casino notes that Byrd was found to have hidden two boxes of shampoo and hair coloring in her car, the value of which is "dramatically less" than that of a several thousand dollar tire changing machine.[6] Moreover, Grand Casino observes that Byrd readily admitted her conduct during the investigation, whereas Appellants were found to have been less than truthful throughout the investigation into their activities. Grand Casino also argues that the record evidence reflects the fact that white males other than Appellants, who had been found to have removed company assets without permission, received disciplinary actions short of termination.

In sum, Appellants have not come forward with sufficient evidence establishing that their termination was racially motivated. Appellants have not established that they were replaced by non-white employees nor have they demonstrated that their

---

[6] Grand Casino maintains the difference in the value and nature of the property allegedly removed by Appellants and Byrd necessarily requires a finding that the circumstances in each case are not "nearly identical" for purposes of this panel's disparate treatment inquiry.

15

discharge was the result of being treated any differently than other non-white similarly situated employees.

## CONCLUSION

Having carefully reviewed the entire record of this case, and having fully considered the parties' respective briefing and arguments, we conclude the district court properly granted summary judgment in favor of Grand Casino because Appellants failed to come forward with evidence establishing: (1) the Plan adopted by Grand Casino constituted criminally illegal activity; or (2) a prima facie case of racial discrimination. Accordingly, the district court's granting of summary judgment is AFFIRMED.

**AFFIRMED.**