**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 28, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

No. 05-10705

A.I. CREDIT CORP.,

Plaintiff,

VERSUS

PHILIP R. THOMAS, Etc; ET AL.,

Defendants;

PHILIP R. THOMAS, individually doing business as
Thomas Global,

Defendant-Third Party Plaintiff-Appellant,

VERSUS

CAPITAL MANAGEMENT STRATEGIES, INC.; JULIAN V.
MOVSESIAN,

Third Party Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

(3:03-CV-0298)

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Philip R. Thomas ("Thomas") appeals the district court's grant of summary judgment in favor of Appellees Julian V. Movsesian ("Movsesian") and Capital Management Services, Inc. ("CMS") (collectively, "Appellees"). He argues that the district court erred in finding that his third party claims against Appellees, which concededly fall outside the applicable statutory limitations periods, are time barred. Specifically, Thomas contends that the discovery rule applies to save his otherwise time-barred claims. We affirm the judgment of the district court.

Underlying this case is an insurance premium financing deal between Thomas and A.I. Credit Corporation ("A.I. Credit") that Movsesian brokered on behalf of his company, CMS. The deal enabled Thomas to obtain a $2,000,000 cash advance, a $22,000,000 life insurance policy, and the financing necessary to fund the cash

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

advance and the premiums on the life insurance policy. A.I. Credit provided all of the necessary financing. According to Thomas, Movsesian promised that Thomas would pay nothing until he died.

On January 12, 1999, Thomas signed an application for the $22,000,000 life insurance policy; and on January 14, 1999, Thomas signed the documents related to the financing of the deal, including a promissory note in the amount of $3,846,223, an assignment of the life insurance policy to A.I. Credit as collateral, a personal guaranty, and five security and control agreements regarding investment accounts to be used as further security for the loan. Thomas alleges that all of the documentation for the financing of the deal went through Movsesian and that he had no contact with A.I. Credit. He states that he entered into the loan transaction for the sole purpose of financing the payment of the premiums on the newly acquired life insurance policy. Thomas believed that the cash value of the life insurance policy would be leveraged to pay the interest cost on the loan until he died, at which point he thought the insurance policy

3

would pay in full all advances of principal and the accrued interest on the loan. According to Thomas, he did not think that he would be required to pay annual interest on the loan because Movsesian promised him that he would pay nothing until he died and also because Movsesian told him that the provisions in the loan documents that provided for payment of interest were just "typical legal words" that were "covered by the special premium finance arrangement with A.I. Credit." Thomas also alleges that he did not receive any disclosures regarding the "special premium finance arrangement," nor did he receive an insurance premium finance agreement as required under Texas law. However, Appellees point out that the promissory note contained a provision that required Thomas to pay interest on the loan on an annual basis, and it stated, "This Note is payable in successive annual installment payments." The note also stated, "The undersigned acknowledges that before signing this Note, borrower has read the Note in its entirety and received a legible, completely filled-in copy of this Note."

On January 18, 1999, Thomas sent a check to Movsesian

4

in the amount of $110,589, which Thomas claims he understood to be an origination fee. Appellees, however, claim that Thomas paid this amount to Movsesian after Movsesian sent a letter to Thomas indicating that the amount of prepaid interest due on the loan was $110,589. No other interest was due on the loan until January 2000. On January 13, 2000, A.I. Credit faxed Movsesian a letter indicating that the outstanding interest on the loan was $119,693.91, and on January 24, 2000, an employee of A.I. Credit authorized payment of this interest from funds held in one of the investment accounts used by Thomas to secure the deal. Thomas acknowledges that he was aware of this payment of interest and that as of January 2000, he "knew of the 'injury' he had suffered at the hands of Movsesian," that is, he knew that he would have to pay interest on the loan contrary to his understanding of its terms.

According to Thomas, when he became aware that he had to make interest payments on the A.I. Credit loan, he complained to Movsesian about the high cost of the deal; and Movsesian in turn helped Thomas to surrender the

5

original life insurance policy and purchase a new policy from American General. Thomas claims that after he purchased the American General policy, there was confusion regarding the amount of interest due on the A.I. Credit loan and the length of the grace period under the American General policy. Whether the result of confusion or not, the premiums on the American General policy were not timely paid, the policy terminated, and Thomas defaulted on the promissory note.

On February 11, 2003, A.I. Credit filed suit against Thomas,[2] seeking recovery under the note and the guaranty and also seeking a declaration regarding its security interests in Thomas's investment accounts. On May 19, 2003, Thomas brought various counterclaims against A.I. Credit and various third party claims against Movsesian and his company, CMS. Specifically, Thomas alleged fraud in the inducement, violations of Article 21.21 of the Texas Insurance Code, breach of fiduciary duty, negligent

---

[2]A.I. Credit also named Thomas's company (Thomas Global), his wife (Wayne Thomas), and various entities related to Thomas Global as defendants. Only Thomas appeals.

misrepresentation, violations of Article 24.11 of the Texas Insurance Code, promissory estoppel, and conspiracy. Appellees filed a motion for summary judgment, contending, in part, that Thomas's claims were barred by the applicable statutes of limitations.[3] Thomas responded that the discovery rule applied to save his claims because he was not aware until January 2000 of his injury, i.e., that he had to pay annual interest on the A.I. Credit loan.[4] The district court, agreeing with Appellees that Thomas's claims were barred by the respective statutes of limitations and finding that the discovery rule did not apply to save them, granted summary judgment in Appellees' favor. According to the

---

[3]Thomas's claims were governed either by two-year or four-year limitations periods: (1) fraud, four years; (2) violations of the Texas Insurance Code, two years; (3) breach of fiduciary duty, four years; (4) negligent misrepresentation, two years; (5) promissory estoppel, four years; and (6) conspiracy, two years. *See A.I. Credit Corp. v. Thomas*, No. 03-cv-00298, at 4 (N.D. Tex. Apr. 21, 2005) (order granting summary judgment).

[4]Thomas also claims that he was unaware that he had to reapply for financing on a yearly basis; however, he did not raise this argument before the district court. We consider it waived. *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 263 (5th Cir. 2005).

court, Thomas could not argue that he was unaware until January 2000 of the annual interest payment requirement because the terms of the note, signed in January 1999, indicated that Thomas would have to pay interest annually. The court cited *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404 (5th Cir. 1998), for this proposition. On appeal, Thomas concedes that absent the discovery rule, all of his third party claims are barred by the respective statutes of limitations. However, he argues that there is a genuine issue of material fact as to when he discovered or should have discovered his injury and that the district court therefore erred in deciding that the discovery rule does not save his third party claims.

This Court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir.), *cert. denied*, 126 S. Ct. 798 (2005). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see*

*also Wheeler*, 415 F.3d at 401. We view the evidence in the light most favorable to the non-movant. *Id.* at 401-02.

Having carefully reviewed the parties' briefs and the relevant portions of the record, we affirm the district court's judgment essentially for the reasons stated therein. Under Texas law, Thomas was put on notice of his injury as of the date he signed the promissory note. His arguments to the contrary are unavailing.

AFFIRMED.