United States Court of Appeals
Fifth Circuit

**F I L E D**

November 28, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 06-10684

(Summary Calendar)

_____

AMERICAN INSTITUTE OF INTRADERMAL COSMETICS, INC doing business as PREMIER PRODUCTS,

Plaintiff - Appellant,

versus

MARYLAND CASUALTY CO,

Defendant - Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
USDC No. 4:05-CV-300

_____

Before KING, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

This case is an insurance coverage dispute between Premier Products, the insured, and

---

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

Maryland Casualty, the insurer. The dispute arose when Premier Products was sued by Rebecca Drake for injuries she alleged were caused by defects in cosmetic lip implantations produced by Premier Products. Following the initiation of that lawsuit, Premier Products submitted a claim to Maryland Casualty for defense and indemnity. Maryland Casualty denied the claim and stated that the insurance policy did not cover defense of that lawsuit because the claims asserted in the suit fell under the policy's exception for "products) ) completed operations hazard." The district court agreed that the insurance policy did not cover the claims submitted and granted summary judgment to Maryland Casualty.

We review grants of summary judgment *de novo*, applying the same standard as the district court. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 798 (2005). Summary judgment is appropriate if the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Wheeler*, 415 F.3d at 401. We view the evidence in the light most favorable to the non-moving party) ) in this case, Premier Products. *Id.* at 401-02.

The issue before this court is whether the insurance contract between Premier Products and Maryland Casualty covered the defense and indemnity from the suit brought by Rebecca Drake. According to the insurance contract, the Commercial General Liability ("CGL") coverage obligates Maryland Casualty "to defend the insured against any 'suit' seeking damages from bodily injury or property damage." The contract goes on: "However, [Maryland Casualty] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." An endorsement incorporated into the policy explains a modification to the CGL coverage, stating, "This insurance does not apply to 'bodily injury' or

'property damage' included within the 'products))completed operations hazard.'" Section V.16 of the CGL coverage form defines "products))completed operations hazard": "Includes all 'bodily injury' and 'property damages' occurring away from premises you own or rent and arising out of 'your product' or 'your work' . . . ." The coverage form then identifies two exceptions, which neither party contends apply here.

Under this language, it would be clear that Drake's lawsuit falls under the policy's exclusion for "products))completed operations hazard," because the suit arose from the implantation of Premier Products products away from Premier Products premises. But the framework gets more complicated as Premier Products points to Subsection (c)(3) under the definition of "products))completed operations hazard" in Section V.16. Subsection (c)(3) states that the "products))completed operations hazard" exception "[d]oes not include 'bodily injury' or 'property damage' arising out of: Products or operations for which the classification, listed in this Coverage Part, states that products-completed operations are subject to the General Aggregate Limit." Ultimately, this case turns on whether Subsection (c)(3) refers to the injuries Drake sustained and the resulting law suit. If the injuries and the law suit fall under Subsection (c)(3), then Maryland Casualty would have to defend and cover those expenses.

Relying on page 3.2.1 of the policy, Premier Products asserts that "cosmetics, toiletries and perfumes" are listed under the Coverage Part and therefore fall under Subsection (c)(3). Because Drake's injuries and suit were based on cosmetic lip implantations, Premier Products argues that Subsection (c)(3) applies. As Maryland Casualty points out, though, page 3.2.1 is not in the Coverage Part and the reference to cosmetics on that page does not refer to the policy coverage. Page 3.1.1 states, "This coverage part consists of this declarations form, the common policy

conditions, and the coverage forms and endorsements indicated as applicable on the forms list." Page 3.2.1 does not fall within any of these categories. Further, Page 3.1.1 notes the coverage and limits of insurance and specifically states that "products and completed operations" are excluded. The reference to "cosmetics, toiletries and perfumes" that appears on Page 3.2.1 is a "classification name," which indicates the type of business in which Premier Products is engaged. Merely classifying Premier Products as a cosmetics company does not extend insurance coverage to all cosmetics-related injuries.

The insurance policy is clear and unambiguous; Subsection (c)(3) does not extend the insurance policy to "cosmetics, toiletries and perfumes." As a result, the lawsuit arising out of the injuries sustained by Drake falls within the "products) ) completed operations hazard" exception and Maryland Casualty is not bound by the policy to cover the costs of defense and indemnity related to that suit.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Maryland Casualty.