

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00095-CV

---

Texas Health and Human Services Commission, Appellant

v.

Susana Lopez, Appellee

---

On Appeal from the 205th District Court

El Paso County, Texas

Trial Court No. 2021DCV0418

---

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the denial of a plea to the jurisdiction filed by Appellant Texas Health and Human Services Commission (HHSC) in a lawsuit filed by Appellee Susana Lopez. HHSC contends the trial court erred in denying its plea to the jurisdiction. It asserts it produced evidence of its legitimate, nonretaliatory reasons for terminating Lopez, and that Lopez failed to show a genuine issue of material fact that those reasons were false and a pretext for retaliation. Because we hold that Lopez did not satisfy her burden to create a fact issue that

HHSC's stated reasons were false and a pretext for retaliation, we reverse and render judgment dismissing the underlying lawsuit for lack of jurisdiction.

## I. BACKGROUND

### A. Lopez's employment with HHSC

Lopez was employed by HHSC for about seven years. HHSC is the state agency in Texas charged with the responsibility for operating the Medicaid program.[1] *Texas Health & Hum. Servs. Comm'n v. Est. of Burt*, 689 S.W.3d 274, 279–80 (Tex. 2024). Qualifying recipients can receive care at HHSC operated facilities, such as the El Paso State Supported Living Center (the Center), where Lopez worked during her employment with HHSC. *Id*. HHSC terminated Lopez for two reasons: (1) failure to remain compliant with required training, and (2) the unauthorized use of her personal cell phone. At the time of her termination, Lopez held the title of Direct Support Professional (DSP) III, a supervisory role.

HHSC's policy[2] provides that employees are required "to maintain compliance with assigned minimum training requirements, including core and specialty requirements, and facility-specific information and local training requirements." Through governing body reports, HHSC facilities must report the percentage of employees in compliance with training requirements and take appropriate action if compliance goals are not met. The policy states that employees are delinquent with training "when they fail to complete or receive credit for all required training within the time frames specific to each required course." It further provides that employees are responsible for ensuring their compliance with required training and requires that "at least 95% of

---

[1] Medicaid is a federal and state assistance program that provides medical care for qualifying recipients. *El Paso Hosp. Dist. v. Texas Health & Hum. Servs. Comm'n*, 247 S.W.3d 709, 711 (Tex. 2008); *see also* 42 U.S.C. §§ 1396–1396w-8. Federal law establishes Medicaid's parameters, and states enact legislation to implement the program. *See El Paso Hosp. Dist. v. Texas Health and Hum. Servs. Comm'n*, 247 S.W.3d 709, 711 (Tex. 2008); 42 U.S.C. § 1396a; 42 C.F.R. § 430.0.

[2] "2.0 Minimum Training Requirements for State Supported Living Centers in the Health and Human Services."

all employees" be in "full (100% compliance) with their core and specialty training requirements at all times."

Lopez's direct supervisor was Residential Coordinator Rosa Valerio. Part of Valerio's responsibilities included ensuring that employees were current on all required training. The training courses were offered both in person and online, with the in-person sessions offered on specific, scheduled dates. Valerio ran monthly reports showing which employees were delinquent on training, and because most trainings were required annually and expired at different times, the Center held monthly "house meetings" where training was discussed. When an employee became delinquent in training, supervisors gave both verbal and written notice, counseled the employee, and provided schedules with upcoming training dates. Employees could take training courses during their workday if enough staff were available to cover their shifts.

Lopez also reported to the Center's Unit Director, Joana Alferez, who also ensured employees complied with required training. She did so by running training reports monthly and testified that employees were responsible for maintaining their own compliance. She also testified that employees could run their own reports and were responsible for doing so.

During the relevant time, the Center's training compliance goal requirement was 96%. Alferez confirmed that when an employee became delinquent in training, they received notice verbally and in writing and could receive disciplinary action if they did not complete required training. She testified that once employees received a first notice, they usually did not remain delinquent. Alferez also explained the termination process required review by Human Resources, the legal department, Director Kevin Ward, and Assistant Director of Programs (ADOP) Teresa Trevino.

**B. Lopez's testimony**

Lopez testified she was diagnosed in 2013 with anxiety, depression, and insomnia and had taken medication for her conditions since that time. She was promoted from DSP II to DSP III that same year and described it as a challenging "new experience" that required her to "start over."

Lopez acknowledged attending monthly meetings where employees were routinely reminded about training requirements. When asked whether she agreed that it was her responsibility to stay current with training, Lopez responded, "I agree and disagree[,]" explaining she relied on her residential coordinator, Valerio, to remind her. Lopez confirmed she could access her own training report at "any time" and when asked whether she regularly ran her reports, Lopez responded, "Not [on a] regular basis, not every day or -- I can't recall how many times." After her shifts, Lopez explained she was "mentally [and] physically exhausted. You don't go to the computer. You just want to go home, so you don't check."

She admitted that supervisors reminded employees about training compliance and that she was able to take trainings during her shifts. Lopez claimed she became delinquent because she was on FMLA leave and that when she returned, HHSC gave her opportunities to complete her training.

She was also questioned about her lawsuit and confirmed she was pursuing a retaliation claim against HHSC.[3] In addition to termination, she identified three acts of alleged retaliation: being written up after filing complaints, being moved from "cottage to cottage," and being overly monitored by Alferez.

**C. Lopez's disciplinary action**

The following timeline summarizes the events pertinent to Lopez's disciplinary actions:

---

[3] She confirmed during her deposition, and at oral argument, that her only claim against HHSC was retaliation.

- December 29, 2017: This is the earliest documented training delinquency in the record. Lopez was delinquent in four trainings: Abuse/Neglect, CPR, Observing and Reporting, and I-Learn Employee Time and Leave. She was given until December 29, 2018, to complete them.

- May and June 2018: Lopez attended house meetings where supervisors reminded employees to remain current on annual trainings.

- August 2018: A coworker reported that Lopez used her personal cell phone and appeared to take photos of facility documents.

- September 2018: ADOP Trevino referred the August incident for investigation by the Center's Incident Management Team. Incident Management Coordinator, Michael Reed, and Incident Investigator Juan Lopez, investigated. Reed and Lopez reviewed video footage, interviewed the reporting witness, and interviewed Lopez. Lopez admitted she used her phone "one time" before to photograph or reference documents while preparing notes but denied any improper use and claimed she used it for translation and spell-check purposes during the incident. The investigation concluded that Lopez used her personal phone to take photos of a facility 24-hour report in violation of HHSC policy.

- September 7, 2018: Lopez was reminded of her delinquent training status and was provided a copy of her training report and a course schedule.

- October 11, 2018: As of this date, Lopez remained delinquent in CPR training.

- October 19, 2018: Lopez failed to attend a scheduled CPR training session. Supervisors reminded her of her delinquency. The Center's training specialist advised Alferez in an email that due to Lopez's CPR delinquency status, she could not perform CPR procedures or be left alone with residents and had to be accompanied by trained staff at all times until she completed her training.

5

- October 24, 2018: Valerio and Alferez issued Lopez a six-page "Written Warning-Personal Cell Phone Usage and failure to maintain training," citing Lopez's training delinquency and the unauthorized use of her personal phone.

- October 29, 2018: Lopez received the written warning in person.

- October 31, 2018: Lopez saw her doctor and her FMLA paperwork was completed.

- October 30, 2018 – January 1, 2019: Lopez took approved FMLA leave and HHSC placed her on "Temporary Exempt – Extended Leave" status.

- January 2, 2019: Lopez returned to work.

- January 10, 2019: Alferez met with Lopez to discuss training and to develop a schedule, requiring completion of all overdue courses by January 31, 2019. Lopez signed a "Training Acknowledgement Schedule."

- January 31, 2019: Valerio reviewed Lopez's training report and verbally reminded her that she remained delinquent.

- February 3, 2019: Lopez completed her required training.

- February 4, 2019: Alferez ran another training report, confirming Lopez completed her required training after the given deadline.

- February 5, 2019: HHSC issued a Disciplinary Action Notice (DAN) citing repeated policy violations, training delinquencies, and the prior October 24, 2018 Written Warning.

- February 6, 2019: Lopez's attorney sent HHSC a letter and alleged Lopez had been denied time to complete her training, demanded that HHSC accommodate Lopez by giving her "adequate time" to complete her training during her shift—though Lopez had completed her training by this time—and asserted that failure to do so would constitute retaliation.

6

- February 15, 2019: HHSC issued a Disciplinary Action Decision terminating Lopez's employment.

### D. Post-termination events

After Lopez was terminated, she filed an EEOC charge on March 29, 2019, alleging that her termination was in retaliation for her 2015 and 2016 EEOC charges. HHSC submitted its response denying the allegations. After receiving a right-to-sue letter, Lopez sued HHSC for retaliation under the Texas Commission on Human Rights Act (TCHRA). Lopez alleged she engaged in multiple protected activities: filing EEOC charges against HHSC, writing a complaint on a written warning, emailing a superior, and sending a letter through her attorney.

### (1) EEOC charges

Lopez specifically alleged HHSC retaliated against her for filing EEOC charges in 2014, 2015, 2016, and 2017. [4]

#### (a) March 20, 2014 charge

On March 20, 2014, Lopez filed her first EEOC charge. Lopez alleged retaliation because she complained about her supervisor, protested the lack of breaks, and stated she was on medical leave due to stress caused by her supervisor.

#### (b) April 16, 2015 and May 20, 2015 charges

In Lopez's April and May 2015 EEOC charges, she referenced two written reprimands from February 2015 and claimed she was told she had created workplace "disharmony" and had failed to ensure proper coverage for her unit. She denied the allegations and asserted that the retaliation was based on her 2014 EEOC charge and her request for a disability accommodation.

---

[4] In her response to the plea, Lopez reasserted those charges as protected acts and added a March 29, 2019 EEOC charge—filed after her termination. On appeal, Lopez no longer asserts this instance of protected activity.

7

Lopez alleged her supervisors failed to follow disciplinary policy because she was not coached or written up—even though she listed two written reprimands at the beginning of these charges.

### (c)  June 5, 2016 charge

On June 5, 2016, Lopez filed her fourth EEOC charge. She contested a disciplinary action she received, described the policy process, and claimed her supervisors failed to follow it. She also challenged the duration of her disciplinary probation, asserting she was "unlawfully" given an additional month of probation. Lopez asserted the retaliation was based on the filing of her 2014 and 2015 EEOC charges and an internal complaint she made to HR on March 9, 2015.[5]

### (d)  November 3, 2017 charge

Lopez filed a fifth EEOC charge on November 3, 2017. She complained that a caseworker, Martha Pena, said she would review cameras to see how quickly Lopez had responded after a patient fell, that another coworker told her "she [Pena] was there to get [her] position," and that she had been suspended pending an investigation for allegedly leaving a patient in the bathroom for 40 minutes. She also claimed she was being retaliated against because of her age.

### (2)  Handwritten complaint on October 24, 2018 Written Warning[6]

When Lopez received the October 24, 2018 Written Warning for her training delinquency and the unauthorized use of her personal phone, she handwrote a complaint at the end of the warning.[7] She alleged that a coworker was retaliating against her for the prior complaints she had

---

[5] Lopez filed an internal complaint with HR on March 9, 2015, making the same complaints raised in the 2015 EEOC charge.

[6] Although not included in her petition, Lopez later identified an additional instance of protected activity in her response to the plea.

[7] The complaint states:

> On August 10, 2018, Antonio B. walked to Dorm, and saw me with phone. (He did not said anything this happen around 1:14 pm). Antonio B. is [retaliating] against me, because I filed a [complaint] against him and Joanna A. (And the class for CPR I been working a lot of hours covering my shift

8

filed against that coworker and Alferez, she complained about her long work hours, and she alleged Alferez threatened her.

### (3) Email to Cazabon-Braly

After Lopez received the October 24, 2018 Written Warning, she was placed on a six-month probation period for work rule violations, including training delinquency and prohibited cell phone use. Later, on November 9, 2018, Lopez emailed Cazabon-Braly.[8]

In her email, Lopez complained about Alferez moving her "from cottage to cottage" which "create[ed] conflict with staff." Lopez stated she "attempted to report concerns to [Alferez's] supervisor, Teresa Trevino" multiple times but that "[n]o actions were taken on [her] behalf for the hostile environment concerns." Lopez also alleged that Alferez was "overly monitoring" her through the surveillance system and requested an investigation. Attached to the email was a written statement from Lopez.

In this statement, Lopez alleged that after the phone incident, she told Reed and Trevino that she had used her phone for translation and spell-check purposes and denied photographing confidential information. Lopez further stated that on October 29, 2018, she told Trevino that she "did not agree with the findings [of the investigation], [she] was never consoled, [and she] fel[t] that policy was not followed."

HHSC treated Lopez's email as requesting an appeal of the October 24, 2018 Written Warning.[9] Lopez's complaints were referred to Ward, and shortly after, he stated in an email: "I watched the video and it clearly shows that she is making motions that support she is taking photos

---

and another shift sometimes I come 2 am in the morning and worked more 12 hours with out Break. On Augt. 24 2018 Joanna A. around 10:05 am come to the dorm and threat me.

[8] Lopez incorrectly states this email was sent in October 2018.

[9] Cazabon-Braly specifically stated in her affidavit that "[b]ased upon Ms. Lopez's allegations and the substance of her complaint, I treated her contact with me as an administrative appeal of her Written Warning."

of documents." Ward confirmed with Lopez that her complaint would be treated as an administrative appeal, and it was. Cazabon-Braly conducted the appeal and found: "I reviewed the investigation report and the surveillance recording and determined that the Written Warning was appropriate disciplinary action and should not be overturned."

### (4) Letter from Lopez's attorneys

The final instance of protected activity Lopez alleged is the letter her attorneys sent to HHSC on February 6, 2019.[10] It was written in response to the Disciplinary Action Notice Lopez received on February 5, 2019.

The letter requested that Lopez be given "adequate" time to complete her training because "due to her stress and anxiety," she had not been "able to stay after work hours to complete the training" and "[d]emanding that [she] complete the training after she has worked a complete shift, ha[d] put a strain on her mental capacity and has been a detriment to her health." The letter also stated that "overall compliance for training courses is not 100% for all employees."

### E. HHSC's plea to the jurisdiction

In response to the suit, HHSC filed a plea to the jurisdiction, arguing that Lopez failed to establish a violation of the TCHRA sufficient to invoke waiver of sovereign immunity because she could not "show she engaged in protected activity," or that "HHSC's stated reasons for its conduct are pretext for retaliation." In response, Lopez urged the trial court to "defer the resolution of [her] plea until the time of trial[,]" asserting that the case "require[d] detailed analysis of the evidentiary

---

[10] HHSC argues this instance of protected activity is "an untimely allegation that Ms. Lopez is making for the very first time in her response to this Court." However, "[s]ubject-matter jurisdiction cannot be waived, and can be raised at any time." *Texas Right to Life v. Van Stean*, 702 S.W.3d 348, 356 (Tex. 2024); *Texas Health & Hum. Servs. Comm'n v. Kadia*, 704 S.W.3d 84, 114 (Tex. App.—Austin 2024, no pet.) (finding in TCHRA retaliation claim against HHSC that "[b]ecause the subject-matter-jurisdiction and merits inquiries for [employee's] claims are intertwined . . . we take up the new position that the reply brief raises"); *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 105 & n.6 (Tex. App.— Fort Worth 2008, pet. denied) (considering subject-matter-jurisdiction argument raised in post-submission appellate brief involving TCHRA retaliation claim against the City of Forth Forth).

facts." Lopez alternatively argued that the evidence raised "a genuine issue of material fact of discrimination and retaliation," that HHSC had not "provided a legitimate nondiscriminatory reason for its actions[,]" and that Lopez "provided sufficient evidence to create a fact question as to whether pretext exists." The parties proceeded with discovery, including witness depositions.

A hearing on the plea was held on September 15, 2023, and the trial court took the plea under advisement.

On January 21, 2025, Lopez supplemented her response to the plea and attached documentation of disciplinary action for comparator employees she claimed were similarly situated to her. HHSC filed a reply shortly after, including the affidavit of Laura Moore, the recently appointed Director of the Center, who provided additional information on each of the alleged comparators' disciplinary history.

On March 11, 2025, the trial court signed its order denying the plea. This interlocutory appeal followed. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing for an interlocutory appeal of a ruling on a plea to the jurisdiction by a governmental unit).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Plea to the jurisdiction and sovereign immunity

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004). "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, the existence of jurisdictional facts is challenged, "we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Texas Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023). This standard mirrors that of a traditional summary judgment; a question of law we

review de novo. *Alamo Heights*, 544 S.W.3d at 771. To avoid dismissal, a plaintiff must raise a genuine issue of material fact. *Id*. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id*. We may grant the plea and dismiss the case when "the law does not allow reasonable jurors to decide otherwise." *Id.* at 805 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)).

A plea to the jurisdiction based on sovereign immunity properly challenges a trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 225–26. Through the enactment of the TCHRA, codified as Chapter 21 of the Texas Labor Code, the Texas Legislature waives immunity for governmental employers. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Texas Health & Hum. Servs. Comm'n v. Rodriguez*, No. 04-24-00684-CV, 2025 WL 1823176, at *2 (Tex. App.—San Antonio July 2, 2025, pet. denied) (mem. op.). In a suit against a governmental employer, like HHSC, the prima facie case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity. *Mission Consol.*, 372 S.W.3d at 636. The TCHRA, "clearly and unambiguously waives immunity" for governmental employers, but the waiver applies "only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id.* at 636, 660.

## B. The TCHRA and the *McDonnel Douglas* framework

The TCHRA provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055. "Because smoking guns are hard to come by, the three-part *McDonnell Douglas* burden-

shifting framework enables" employees to rely on circumstantial evidence to establish their prima facie case of retaliation. *Alamo Heights*, 544 S.W.3d at 782. If an employee relies on circumstantial evidence, as is the case here, we follow the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Texas Tech Univ. Health Scis. Ctr. El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). Under the *McDonnel Douglas* framework, (1) the employee must first create a presumption of retaliation by establishing a prima facie case; (2) if the plaintiff establishes a prima facie case, the employer can rebut the presumption by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action; and (3) once rebutted, the presumption disappears, and the employee must then establish that the employer's stated reason is false and a pretext for retaliation. *Alamo Heights*, 544 S.W.3d at 782 ("These three burden-shifting steps apply to retaliation claims[.]").

To establish a prima facie case of retaliation under the TCHRA, an employee must show: (1) she engaged in protected activity; (2) she experienced a materially adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Id*. To constitute protected activity under the TCHRA, "[t]he employee's complaint must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.* at 787; *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 59 (Tex. 2021) ("But our recent precedent is clear that to invoke the protections of Section 21.055, the conduct relied on by the employee 'must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue.'"). If the employer produces evidence of a legitimate reason for its adverse employment action, the employee must prove the adverse action would not have occurred "but for" the protected activity. *Alamo Heights*, 544 S.W.3d at 782. The Supreme Court has confirmed that the but-for causation standard applies in cases alleging retaliation for opposing discriminatory practices under

§ 21.055. *See Apache Corp. v. Davis*, 627 S.W.3d 324, 335 (Tex. 2021) (citing *Alamo Heights*, 544 S.W.3d at 782–83, 790).

## III. ANALYSIS

In its sole issue on appeal, HHSC contends the trial court erred in denying its plea to the jurisdiction. HHSC specifically asserts Lopez failed to establish a prima facie case of retaliation; and even if she did, HHSC maintains Lopez failed to raise a fact issue on whether its stated reasons were pretext and failed to provide the required but-for causation proof to rebut HHSC's evidence of its legitimate, nonretaliatory reasons for its adverse employment action.

### A. HHSC produced evidence of legitimate, nonretaliatory reasons.

Assuming Lopez established a prima facie retaliation case, any presumption raised has been rebutted because HHSC produced evidence of legitimate, nonretaliatory reasons for terminating her employment. HHSC stated it terminated Lopez for two reasons: (1) training delinquency, and (2) unauthorized phone use. Lopez challenges both reasons.

#### (1) First stated reason: training delinquency

HHSC's first stated reason for Lopez's termination was her failure to remain compliant with required training. HHSC policy provides that it is an employee's responsibility to remain current on training, to notify their supervisors of their need for training, register for and attend trainings, complete competency assessments honestly, and submit related training documentation. Records proffered by HHSC confirm that Lopez had training delinquency status as early as December 29, 2017. By October 11, 2018, Lopez remained delinquent in CPR training.

The October 24, 2018 Written Warning Lopez received outlined her ongoing training delinquency. On January 10, 2019, Alferez met with Lopez to discuss her delinquency status and to develop a training schedule. Lopez was told she was required to complete all training by January 31, 2018. She did not complete her training by the deadline.

**(2)  Second stated reason: unauthorized phone use**

HHSC's second stated reason for Lopez's termination was the unauthorized use of her personal phone. In August 2018, a coworker reported seeing Lopez use her personal phone and appearing to take photos of documents. An internal investigation was conducted and the report concluded that "Lopez took photos of the Facility 24 hour report using her personal cell phone" in violation of HHSC policy.

Based on the evidence presented, we determine HHSC produced evidence of legitimate, nonretaliatory reasons for the disputed employment action. *Alamo Heights*, 544 S.W.3d at 782. HHSC has therefore rebutted the prima facie case, and no presumption of retaliation exists. *See id*. at 784 ("Here, the defendant rebutted the prima facie case by producing evidence of a legitimate reason for its employment actions, which means no presumption of retaliation exists."). "The absence of a presumption triggers the plaintiff's duty to create a fact question on the ultimate issue—whether retaliation caused the adverse employment action—to survive a jurisdictional challenge." *Id*.

**B.  Lopez's evidence failed to raise a fact issue on whether HHSC's stated reasons were false and a pretext for retaliation.**

Because HHSC met its burden of production, the burden shifted to Lopez to raise a genuine issue of material fact showing HHSC's stated reasons were false and a pretext for retaliation. *Id*. at 782. If the employer provides evidence of legitimate, nonretaliatory reasons for the adverse action—as HHSC did here—"the employee must prove the adverse action would not have occurred 'but for' the protected activity." *Id*. "The but-for causation standard [in this context] is significantly more difficult to prove than prima facie causation." *Id*. Lopez relies primarily on examples of other employees whom she claims were treated "differently" than her.

To establish disparate treatment, Lopez must demonstrate that she and other employees were "similarly situated" and that other employees were treated more favorably under "nearly identical circumstances." *See Rodriguez v. City of Poteet*, No. 04-13-00274-CV, 2014 WL 769286, at *7 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (quoting *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005)). Lopez and the other employees must be similarly situated in "all material respects, including similar standards, supervisors, and conduct." *Alamo Heights*, 544 S.W.3d at 791; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

Lopez first points to an email sent by Ward on October 19, 2018, stating that "any staff listed below as delinquent must immediately be pulled from their duties and must complete the required training." However, the referenced list does not appear in the record. Lopez also points to her FMLA paperwork, asserting that she was on leave from October 2018 through January 1, 2019, and that the letter from her attorneys requesting additional time to complete training demonstrates pretext.

HHSC maintains that "any inference of causality is precluded when, as here, the employer has already begun its progressive disciplinary process at the time of plaintiff's alleged protected activity." We agree. The record confirms that Lopez's disciplinary process began long before Lopez took leave and before the February 6 letter was sent. Evidence shows Lopez's training delinquency status as early as December 2017. She again became delinquent in August 2018 and received a "Written Warning-Failure to complete Mandatory Training" on August 2, 2018. Lopez testified that she received the October 24, 2018 Written Warning on October 29, 2018. She then went to her doctor and requested medical leave. Lopez was on leave from October 30, 2018 to January 1, 2019. After returning from FMLA leave, Alferez met with Lopez to create a training schedule and Lopez was required to complete her training by January 31, 2019. The written

16

warning specifically provided that "failure to improve your conduct may result in disciplinary action, up to and including dismissal." By January 31, Lopez had not completed her training. On February 4, HHSC issued the DAN to Lopez citing repeated policy violations, training delinquencies, and the prior October 24, 2018 Written Warning. The notice stated Lopez could submit a written rebuttal by February 8. The letter sent by Lopez's attorneys on February 6 responded to the DAN. By the time HHSC received the letter on February 6, Lopez had already been issued the October 24, 2018 Written Warning, the February 5, 2019 DAN, and the six-month warning period remained active. The Texas Supreme Court has explained that the "but-for causation standard prevents an employee who knows that . . . she is about to be fired for poor performance from profiting off of an unfounded charge of . . . discrimination made to protect herself from an unrelated employment action." *Apache*, 627 S.W.3d at 335–36 (internal quotation marks omitted). The timeline of events here is determinative, as "[c]arrying out a previously planned employment decision is no evidence of causation, even if the employment decision was contemplated[] though not yet definitively determined[.]" *Id*. at 337 (internal quotation marks omitted).

Lopez further cites an October 18, 2018 email purportedly listing "several dozens of employees that were delinquent"; records she claims "demonstrate dozens of employees who have not completed training"; and records showing one employee being disciplined for being "behind on training" and another for "using [their] cell phone and [being] behind on training." According to Lopez, HHSC "departed from its normal policies by instead terminating [her]" and this alleged inconsistency shows that HHSC's "proffered reason for terminating [her] is unworthy to rebut [her] evidence of retaliation for the fact finder or jury." We disagree.

17

The record contains "Written Warnings" issued to five other employees for rule violations, including training delinquency and unauthorized cell phone use. These written warnings mirror those issued to Lopez—each contains detailed documentation of infractions, identifies the applicable work rules violated, imposes a six-month probation period, and explicitly states, "failure to improve your conduct may result in disciplinary action, up to and including dismissal." Even though Lopez bore the burden to show a fact issue that HHSC's stated reasons were pretext, it was HHSC who provided accounts of each employee's disciplinary actions through the affidavit of Director Moore. The evidence proffered by HHSC demonstrates that the comparator employees were not similarly situated to Lopez. Three of these employees received written warnings for training delinquency but unlike Lopez, they completed their courses and were later terminated for issues related to abuse of leave. The other two employees received written warnings for unauthorized cell phone use, but their warning periods expired without further incident, unlike Lopez's situation.

Lopez failed to establish that these employees were similarly situated to her. To show disparate treatment in comparison to similarly situated employees, the "evidence of disparate treatment of other employees' conduct requires that the employees' circumstances be 'comparable in all material respects.'" *Apache*, 627 S.W.3d at 339. Lopez had to show that the other employees were treated more favorably under "nearly identical circumstances." *Rodriguez*, 2014 WL 769286, at *7. It is not "nearly identical" if the two have "different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records[.]" *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam). There is simply no evidence that Lopez received disparate treatment in comparison to similarly situated employees.

18

Because HHSC met its burden of producing legitimate, nonretaliatory reasons for Lopez's termination, it was incumbent upon Lopez to produce evidence raising a genuine issue of material fact that those reasons were false and a pretext for retaliation. Lopez failed to do so and has therefore failed to invoke the TCHRA's limited waiver of sovereign immunity. Accordingly, the trial court erred in denying HHSC's jurisdictional plea. HHSC's sole issue is sustained.

## IV. CONCLUSION

We reverse and render judgment dismissing the suit for lack of jurisdiction.

MARIA SALAS MENDOZA, Chief Justice

February 2, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.