# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40371

ALVIN JACKSON,

      Plaintiff - Appellant

v.

FRISCO INDEPENDENT SCHOOL DISTRICT,

      Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

June 15, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue in this appeal from a summary judgment is whether a genuine dispute of material fact exists for the reasons given for nonrenewal of a teacher's contract. Alvin Jackson challenges the summary judgment awarded Frisco Independent School District (FISD) against his claims that, in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA), 42 U.S.C. § 2000e *et seq.*; Tex. Labor Code §§ 21.051, 21.055, FISD discriminated against him because of his race and retaliated against him for reporting such claimed discrimination. **AFFIRMED IN PART**; **REVERSED IN PART**; **REMANDED**.

No. 14-40371

## I.

During his first year (2010–2011) at Frisco High School in Texas, Jackson was one of four black teachers, as well as the only black coach, in a faculty of approximately 100 teachers. During that first year, Jackson received generally positive reviews, including a positive annual appraisal from his supervisor, associate-principal Smith.

In August 2011, Jackson complained to Smith about difficulties in working with another coach, Reiter. Smith advised Jackson not to contact the human resources department (HR). The parties dispute whether this complaint constituted a report of racial discrimination. In any event, in his declaration, Jackson states: he advised Smith he wanted to file a formal complaint with HR regarding race-based discrimination; Smith instructed him not to contact HR; and Smith never investigated the claimed discrimination.

Three weeks after Jackson complained to Smith, Smith performed a walkthrough evaluation of Jackson's classroom, noting a number of deficiencies. That October, Smith conducted and prepared an observation summary appraisal of Jackson, ranking him as "below" or "unsatisfactory" in a number of teaching areas. And, that November, Jackson was placed on an intervention plan for teachers in need of assistance (TINA). Following several walkthrough evaluations, he was found non-compliant with the TINA.

Earlier in the fall of 2011, after Jackson's unsuccessful attempt to have Smith address his August complaint, Jackson complained about race-based discrimination to the principal, Palacios. In her deposition, Palacios admitted Jackson claimed Reiter's conduct was on account of Jackson's race. After Jackson stated to Palacios that he was considering filing a grievance with HR, Palacios convinced him to wait. And, in her deposition, Palacios recalled stating to Jackson: "[M]aybe FISD was not the fit for him". Similarly, in his declaration, Jackson claims Palacios stated he was "not a 'good fit' for 'this

2

No. 14-40371

school district'". There is a genuine dispute regarding exactly what Palacios stated; but, again, she admits she stated "maybe FISD was not the fit for him". Moreover, Palacios admits not investigating Jackson's complaint.

By its 10 April 2012 letter, FISD's board informed Jackson that his contract would be recommended for nonrenewal. He responded by a 23 April letter, in which he charged race-based discrimination and retaliation. He requested being provided any evidence of failure as a teacher or insubordination, as well as a public hearing under Texas Education Code § 21.207(a).

Regarding Jackson's claims of discriminatory and retaliatory treatment, FISD promised to investigate the claims and sought permission from Jackson to postpone the nonrenewal hearing until after the investigation. Jackson refused to delay the hearing.

During an 8 May hearing, each party was initially permitted only 45 minutes to present their case, during which they were allowed to make opening statements, present witnesses and exhibits, cross-examine witnesses, and make closing arguments. A brief extension of time was granted, and each party exceeded the 45-minute limit. Although the record does not indicate by exactly how much time the parties exceeded 45 minutes, the examiner stated he was willing to exceed the limits by five or 10 minutes, but not 30.

On 18 and 23 May, Jackson requested dismissal, by nonsuit, of his challenge to his nonrenewal. But, rather than the challenge being dismissed, the hearing officer issued written findings of fact, conclusions of law, and recommendations that: there was insufficient evidence of racial discrimination and retaliation; and FISD had legitimate, non-discriminatory reasons for nonrenewal of Jackson's contract.

On 18 June, relying on the hearing-examiner's recommendations for nonrenewal, the school board voted unanimously not to renew Jackson's

3

No. 14-40371

contract. Jackson did not challenge the nonrenewal before the commissioner of education or in state court; instead, he filed this action.

Following discovery, during which FISD did not depose Jackson, summary judgment was requested by FISD. Regarding FISD's asserting collateral estoppel based on Jackson's administrative hearing, the district court ruled: Jackson did not have a fair opportunity to litigate his claims in that hearing; and, therefore, his claims were not collaterally estopped. *Jackson v. Frisco Indep. Sch. Dist.*, No. 4:12-CV-318, slip op. at 8–11 (E.D. Tex. 31 Mar. 2014). Although the court ruled Jackson established a *prima-facie* case for racial discrimination and retaliation, it ruled he failed to show a genuine dispute of material fact regarding the requirement that he show pretext on the part of FISD for unlawful discrimination or retaliation. *Id.* at 15.

## II.

A summary judgment is reviewed *de novo*, by the same standards as applied by the district court. *E.g., Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). "The evidence should be viewed in the light most favorable to the non-moving party, and this court should refrain from making credibility determinations or from weighing the evidence." *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citation and internal quotation marks omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary-judgment record includes, *inter alia*: Jackson's lengthy and extremely detailed declaration; numerous evaluations of Jackson and other teachers at Frisco High School; correspondence between Jackson, school

No. 14-40371

officials, and school-board officials; excerpts of depositions, including of Smith and Palacios; Jackson's term contract; and the 8 May 2012 hearing-examiner transcript (at which Jackson did not testify).  As referenced *supra*, not included in the summary-judgment record is a deposition of Jackson, because FISD did not depose him.  Furthermore, although FISD moved unsuccessfully for the district court to strike portions of Jackson's declaration, it did not renew that challenge on appeal.

## A.

FISD claims collateral estoppel bars Jackson's claims because:  he requested, and received, an administrative, nonrenewal hearing before an independent hearing examiner; and the examiner issued findings, conclusions, and recommendations, which are final and binding.

In Texas, teachers employed by term-contracts who are notified of a possible nonrenewal of their contracts may request a hearing.  Tex. Educ. Code § 21.207(a).  After Jackson requested the hearing, and in accordance with Texas law, FISD appointed a hearing examiner to conduct the evidentiary hearing and issue findings, conclusions, and recommendations.  *See* §§ 21.207(b), 21.254–257.  During the hearing, a teacher has the right to: representation of his or her choice; hear the evidence on which the charges are based; cross-examine adverse witnesses; and present evidence.  § 21.256(c).

After the school board receives the examiner's recommendations, it considers them and the record, and allows each party to present oral argument. § 21.258(b).  Following the board's decision, a teacher may appeal to the commissioner of education, who may substitute his judgment if the board's decision is arbitrary, capricious, unlawful, or not supported by substantial evidence.  § 21.209.  And, either party may appeal the commissioner's decision to one of two designated state district courts.  § 21.307(a).

No. 14-40371

FISD asserts:  Jackson failed to exhaust this administrative process by not appealing the examiner's findings, conclusions, and recommendations; the examiner's findings and conclusions are therefore final and binding; and, accordingly, collateral estoppel precludes Jackson's discrimination and retaliation claims.

"Generally, the issue of whether to apply collateral estoppel is a *question of law*, making our review *de novo*."  *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013) (emphasis added) (citing *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997)).  "Collateral estoppel prevents litigation of an issue when:  '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'"  *Id.* at 548 (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)).  "Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same."  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1306 (2015) (alteration, citation, and internal quotation marks omitted).

When the initial proceeding is a state administrative hearing, whether such a proceeding is "usable in federal court" for collateral-estoppel purposes hinges on the "treatment" such "proceedings would receive in the courts of the state . . . in which those prior proceedings were held".  *Bradberry*, 732 F.3d at 549 (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007)).

Texas administrative agency decisions, including the decision at issue, have preclusive effect "'when the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it *which the parties have had an adequate opportunity to litigate*'".  *Mullinax v. Texarkana Indep. Sch. Dist.*, 252 F.3d 1356, 2001 WL 422731, at *2 (5th Cir. 2 Apr. 2001) (unpublished) (emphasis added) (quoting *Muckelroy v. Richardson Indep. Sch. Dist.*, 884

No. 14-40371

S.W.2d 825, 830 (Tex. App. 1994)); *see also Bradberry*, 732 F.3d at 549 ("Texas law applies collateral estoppel to administrative agency orders when the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." (citation and internal quotation marks omitted)).  "[T]he correct inquiry is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair".  *B&B Hardware, Inc.*, 135 S. Ct. at 1309 (citation omitted).  As discussed *infra*, and because Jackson did not have an adequate opportunity, in the administrative hearing, to litigate the discrimination, retaliation, and nonrenewal issues, the school board's decision does not have preclusive effect.

The Supreme Court has held:  "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."  *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986).  Although FISD states Jackson failed to challenge the school board's determination by not exercising his statutory right to pursue a judicial appeal, *see* Tex. Admin. Code § 21.307, neither party cites, let alone analyzes, *Elliott*'s applicability *vel non*.  *Elliott* interpreted whether unreviewed administrative agency decisions resolving Title VII claims fall under the auspices of 28 U.S.C. § 1738, the statutory analogue to the Constitution's Full Faith and Credit Clause.  478 U.S. at 796.  Therefore, to the extent that holding applies to the facts in this matter, unreviewed administrative agency decisions are not entitled to preclusive effect in Title VII matters.  Because neither party briefed this issue, however, and because Jackson did not have an adequate opportunity to litigate his claim, we pretermit a thorough assessment of *Elliott*'s applicability and hold, as discussed below, that Jackson is not collaterally estopped from pursuing his two Title VII claims.

No. 14-40371

**1.**

In opposing application of collateral estoppel by the district court, Jackson asserted that, during the administrative-hearing process, he twice invoked 19 Tex. Admin. Code § 157.1056(b), which allows a petitioner at any time to nonsuit a hearing before the Texas commissioner of education. In its collateral-estoppel analysis, however, the court noted, but did not address, the nonsuit issue. But, because the court ruled correctly that Jackson did not have an adequate opportunity in the administrative hearing to litigate the issues concerning nonrenewal, we need not reach the nonsuit issue.

**2.**

As noted, for collateral estoppel to apply in Texas, a litigant must have had an adequate opportunity to litigate his claim. *E.g., Bradberry*, 732 F.3d at 549; *Mullinax*, 2001 WL 422731, at *2. The district court considered that Jackson was represented by counsel and had an opportunity to cross-examine witnesses at the hearing, and that the hearing examiner applied the rules of evidence, but it ruled Jackson had an inadequate opportunity to litigate the issues relating to nonrenewal because he had only 15 days to prepare for the hearing and less than 24 hours' notice of the hearing date. Jackson also requested a copy of his personnel file on 23 April but did not receive a complete copy until 4 May. He was then notified on 7 May that the hearing would take place on 8 May. Essentially for the reasons stated by the district court, Jackson did not have an adequate opportunity to litigate his pending discrimination and retaliation claims before the hearing examiner. *Jackson*, slip op. at 8–11. Accordingly, FISD's collateral-estoppel claim fails.

**B.**

Jackson claims FISD discriminated and retaliated against him, in violation of Title VII and the TCHRA. "The Supreme Court of Texas has consistently held that the analogous federal statutes and the cases interpreting

8

No. 14-40371

Title VII guide its reading of the TCHRA." *Satterwhite v. City of Hous.*, No. 14-20240, 2015 WL 877655, at *3 (5th Cir. 3 Mar. 2015) (alterations and internal quotation marks omitted) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)). Therefore, the federal and state claims are addressed concurrently.

### 1.

Needless to say, discriminating against an employee on the basis of race violates federal law. 42 U.S.C. § 2000e-2. "Under the [long-established and well-known] burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)", if, as in this instance, the employee lacks direct evidence of discrimination, he must "establish a prima facie case of discrimination using circumstantial evidence". *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (citation omitted). To do so for his claim of discrimination, Jackson must demonstrate: membership in a protected class; qualification for the position held; an adverse employment action; and either replacement by persons outside of the protected class or disparate treatment of others outside the protected class who are similarly situated. *Id.* (citation omitted).

"The burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the termination"; and, if the employer succeeds, "the presumption of discrimination dissipates, leaving the plaintiff with the ultimate burden of establishing . . . that the employer discriminated against the employee because of the employee's protected status". *Id.* (citation omitted).

The district court ruled Jackson established a *prima-facie* case because FISD failed to contest the first three elements and Jackson satisfied his burden on the fourth. FISD disputes only that fourth element: whether similarly situated individuals outside Jackson's protected class were treated more

favorably. "[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees". *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (alterations, citations, and internal quotation marks omitted).

FISD asserts that negative employment evaluations are not adverse employment actions under Title VII in this circuit; rather, only employment actions concerning hiring, granting leave, discharging, promoting, and compensating may be considered legally adverse. Therefore, according to FISD, because the board has not taken an adverse employment action against a similarly situated employee, these comparators were not "treated more favorably". But, as noted above, in assessing the fourth *prima-facie* element, courts analyze the similarity *vel non* of the *misconduct* that is the impetus for the adverse employment action. *E.g., id.*

Proceeding to the merits of the parties' claims regarding the fourth element for a *prima-facie* case, and essentially for the reasons stated by the district court, *Jackson*, slip op. at 12–13, Jackson satisfied his burden because he demonstrated that similarly-situated, non-protected class members were treated more favorably than he. As noted, the assessment requires an employer to give "preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees". *Okoye*, 245 F.3d at 514.

For example, the summary-judgment record contains 11 evaluations school employees performed for Jackson from 2011–2012. Several different evaluators assessed him, including Smith and Palacios, whose evaluations

were markedly more negative than those of their colleagues, which were otherwise quite positive.

To demonstrate nearly identical claimed misconduct, Jackson cites evaluations of four coaches and educators whose contracts were renewed. For example, the most negative reviews are those of another coach and teacher (coach/teacher), whose negative conduct is nearly identical to Jackson's purported shortcomings.

The coach/teacher had over 15 years' experience. His evaluations consisted of both positive and highly negative feedback, with the negative evaluations paralleling those made about Jackson and including, *inter alia*: failure to provide adequate direction; failure to ask quality questions; students' being off-task and disengaged; lack of structure; and lack of clarity of the learning objectives conveyed to students. Although the coach/teacher had numerous years of experience in the classroom compared to Jackson, he received negative evaluations regarding his teaching abilities. Because the standard is whether the comparators are nearly identical, *and not identical*, the coach/teacher and Jackson are similarly situated. At bottom, Jackson's nonrenewal and the coach/teacher's renewal satisfy the fourth element of the *prima-facie* requirement. Therefore, because the fourth element for a *prima-facie* case is satisfied, and because the first three elements are not in dispute, Jackson has shown a *prima-facie* case of discrimination.

The second step in the burden-shifting framework is whether FISD presented a legitimate, non-discriminatory reason for the adverse employment action. *Wheeler*, 415 F.3d at 405. "The burden on [the employer] to produce a legitimate nondiscriminatory reason for terminat[ion] . . . is one of production, not persuasion; it can involve no credibility assessment." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) (citation and internal quotation marks omitted). This second step is not in dispute.

At the third step, Jackson has the burden, for summary-judgment purposes, of showing a genuine dispute of material fact for whether FISD discriminated against him because of his protected status. *Wheeler*, 415 F.3d at 405. FISD admitted at oral argument in our court that, were this action against Smith or persons at the "Smith level" (which, obviously, would include Palacios), a genuine dispute of material fact would exist, making summary judgment inappropriate. In short, this would preclude summary judgment were this action either against actors on the Smith level, or, for the following reasons, if their alleged animus could be imputed to FISD.

When a person with discriminatory animus has influence over the final decisionmaker, that animus may be imputed to that decisionmaker. *E.g., Haire v. Bd. of Supervisors of La. State. Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 366–67 & n.11 (5th Cir. 2013). Here, the hearing examiner considered Jackson's negative evaluations, which were performed primarily by Smith and Palacios, and Smith's and Palacios' testimony before the hearing examiner, which the examiner found credible. In its brief, FISD states the hearing examiner's findings and conclusions "caused the school board to vote to [nonrenew] Jackson's teaching contract. . . ". Therefore, because Smith and Palacios had influence over the examiner's recommendations, which the board adopted, there is a genuine dispute of material fact whether Smith's and Palacios' allegedly *discriminatory* animus may be imputed to the board.

In addition, there is a genuine dispute of material fact whether FISD had actual knowledge of Jackson's claims of discrimination and retaliation. *See Mullinax v. Texarkana Indep. Sch. Dist.*, 48 F. App'x 917, 2002 WL 31115047, at *3 (5th Cir. 12 Sept. 2002). A genuine dispute exists regarding when Jackson informed school officials, and the school board, about the claimed discrimination and retaliation. Jackson contends he initially complained to Smith about the discriminatory conduct in a meeting in August 2011. He

further claims:  he complained to Palacios in January 2012 about the original discriminatory conduct and Smith's subsequent retaliatory negative walkthrough evaluations; he complained to Elmore, director of secondary personnel for FISD, regarding the incidents in question; and he provided HR "names and specific instances of discrimination and retaliation".  On the other hand, FISD contends Jackson's 23 April letter requesting a nonrenewal hearing was FISD's first notice of Jackson's discrimination and retaliation claims.  But, based on the deposition of FISD's assistant superintendent for HR, Dr. Bass, she knew of Jackson's complaint in March to Elmore (the date she learned of the complaint is unclear, and she contests its contents), even though she did not see a complaint in writing until the 23 April letter.

Moreover, Jackson met with Dr. Bass and another school official on 4 May to discuss his claims.  By a 7 May letter to Jackson, Dr. Bass stated she was unable to complete the investigation because Jackson "chose not to provide any information and/or evidence in support of [his] allegations".  Dr. Bass, however, as discussed *supra*, admits Jackson met with Elmore in March 2012, prior to writing his 23 April letter, and provided Elmore with "a listing of events that he was concerned about".  Further, in Dr. Bass' deposition, she states Jackson informed her that the evidence Jackson possessed was in the form of emails; and she admits that, even though these emails were accessible to her, she did not retrieve them, and instead relied on Jackson's failure to provide them as a basis for claiming she could not complete the investigation.

In any event, the board adopted the hearing-examiner's recommendation, which, as noted, contained Smith's and Palacios' adverse testimony and relied on Smith's and Palacios' negative evaluations.  The examiner found Jackson's "[d]eficiencies pointed out in observation reports, appraisals or evaluations", "[f]ailure to fulfill duties or responsibilities", and "[i]nsubordination or failure to comply with official directives", all stated in

No. 14-40371

Smith's and Palacios' evaluations, justified the nonrenewal recommendation. Again, there is, therefore, a genuine dispute of material fact whether Smith's and Palacios' allegedly discriminatory animus is imputed to the board.

Accordingly, because FISD conceded at oral argument that there is a genuine dispute for pretext at the Smith level, and because a genuine dispute of material fact exists for whether the allegedly discriminatory animus at that level is imputed to FISD, it is not entitled to summary judgment against Jackson's discrimination claim.

**2.**

For the reasons that follow, FISD is also not entitled to summary judgment against Jackson's retaliation claim. In that regard, for the earlier discussed, requisite burden-shifting analysis, and because Jackson presented no direct evidence of retaliation, he must, at the first of the three steps, present a *prima-facie* case, consisting of three elements. *E.g., Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

For the first element, he must demonstrate he participated in an activity protected by Title VII. *Id.* "[A]n employee has engaged in protected activity if she has opposed any practice made an unlawful employment practice. . . ". *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170–71 (5th Cir. 2014) (citation and internal quotation marks omitted).

For the second element, the employee must show his employer took an adverse employment action against him. *E.g., Banks*, 320 F.3d at 575. An adverse employment action is an action that is "materially adverse", that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination". *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).

For the third, and final, element for a *prima-facie* case, a causal connection must exist between the protected activity and the adverse

employment action. *E.g., Banks*, 320 F.3d at 575. "We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citations omitted).

Continuing with the next two steps in the burden-shifting analysis, and if Jackson presents a *prima-facie* case, the burden shifts to FISD in the second step to articulate a legitimate, non-retaliatory reason for the adverse employment action. *E.g., Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). And, for summary-judgment purposes, "if that burden is satisfied, the burden then ultimately falls to the employee [in the third, and final, step] to . . . [show a genuine dispute of material fact for whether] the employer's stated reason is actually a pretext for unlawful retaliation". *Gorman*, 753 F.3d at 171 (citation omitted). "Showing pretext requires a plaintiff to produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination . . . . [and] the plaintiff must show that the protected activity was the 'but for' cause of the retaliation." *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (citations and internal quotation marks omitted).

Regarding the first element of the *prima-facie*-case requirement, and as discussed *supra*, Jackson engaged in a protected activity by complaining about race-based discrimination to his superiors. "An employee that files an internal complaint of discrimination engages in a protected activity." *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001)).

FISD does not contest the second element for a *prima-facie* showing: an adverse employment action (the nonrenewal of Jackson's contract).

The third, and final, element for a *prima-facie* case is whether there is a causal link between the adverse employment action and the protected activity.

*E.g., Banks*, 320 F.3d at 575.  Along that line, Jackson first has the burden of showing FISD knew about the protected activity, *e.g., Manning*, 332 F.3d at 883, which he satisfied, as discussed *supra*.

For this third element for a *prima-facie* showing, a causal link exists when the evidence demonstrates the adverse employment action was taken in part based on knowledge of the employee's protected activity.  *E.g., Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001).  Whether the adverse employment action was taken in part based on the knowledge of Jackson's complaint of discrimination, and whether, in the third step of the burden-shifting analysis, there is a genuine dispute of material fact for pretext, require an overlapping evidentiary assessment of the decisionmaker's motive.   In the light of FISD's concession that there is a genuine dispute of material fact regarding pretextual motives at the Smith level, and our conclusion that a genuine dispute of material fact exists for whether those motives are imputed to FISD, the third element for the *prima-facie* case (whether the action was taken in part based on knowledge of the protected activity) is satisfied. Therefore, at the first step of the burden-shifting analysis, Jackson has demonstrated a *prima-facie* case of retaliation.

Jackson does not contest the second step for the burden-shifting analysis for his retaliation claim (a legitimate, non-retaliatory reason for the adverse employment action).

For the third step for the burden-shifting analysis (pretext), and as noted, FISD conceded at oral argument the existence of a genuine dispute of material fact at the Smith level regarding pretext, relying instead on the claimed separation between that level and the school board, supposedly created by the hearing examiner, to shield the board from liability.  But, because there is a genuine dispute of material fact for whether the conduct by

No. 14-40371

the Smith-level actors was retaliatory and can be imputed to the board, there is a genuine dispute of material fact as to pretext.

Last, as part of the third, and final, step in the burden-shifting analysis, Jackson must prove that, but for FISD's retaliatory animus, the adverse employment action would not have occurred. *Willis*, 749 F.3d at 318. Because there is a genuine dispute of material fact for why Jackson's contract was nonrenewed, resolution of the but-for causation issue is also unavailable through summary judgment.

## III.

For the foregoing reasons, the judgment is **AFFIRMED IN PART and REVERSED IN PART**; and this matter is **REMANDED** for further proceedings consistent with this opinion.